STEEL CLAD BATH CO. v. MAYOR et al. SAME v. DAVISON. SAME
v. PECK et al.

(Circuit Court, S. D. New York. December 5, 1896.)

1. PATENTS—INVENTION.

The fact that one is the first to produce an article having features long de-
sired, that he has succeeded where many others failed, entitled him to a place
among inventors; and even if there are doubts on the subject of his patent,
they should be resolved in his favor.

2. SAME—INFRINGEMENT—COLORABLE VARIATIONS.

A claim for a bath-tub composed of a smooth sheet-metal casing, having a
lining of copper, aluminum, etc., hammered, rolled, or pressed into "close con-
tact" therewith, is infringed by a tub in which an asbestos sheet $2/100$ of an
inch thick is interposed between the casing and the lining.

3. SAME—BATH-TUBS.

The Booth patent, No. 458,995, for an improved bath, *held* valid and in-
fringed.

These were three suits brought by the Steel Clad Bath Company
against Mayor, Lane & Co., and against Samuel Davison, and against
Peck Bros. & Co., respectively, for alleged infringement of a patent
for an improved bath-tub. Final hearing in equity.

The issues in these actions being the same they were tried and argued together.
The complainant is the owner of letters patent No. 458,995, granted to George
Booth, September 8, 1891, for an improved bath-tub. Four claims of the patent
are alleged to be infringed.

The specification says:

"The object of the invention is to construct a cheaply-made but practically in-
destructible bath-tub; and it consists, essentially, of a bath-tub composed of a
casing made of light sheet steel or such other light sheet metal as has a perfectly
smooth surface, the said casing being lined with copper, aluminum, or other light
flexible metal hammered, rolled, or pressed into close contact with the smooth inner
surface of the casing, the said bath-tub being preferably made in three sections,
each section having an outwardly-projecting flange formed on it to correspond
with the flange on the section against which it abuts.

"It will not be possible to obtain the advantages of my invention with an outer
casing made of cast metal, as owing to the shape of the bath the inner surface of
the casing could not be made sufficiently smooth to receive the lining. Before
fitting the linings into the bath great care must be taken to see that the inside
surface of the casing is made perfectly clean, as the slightest piece of dirt would
destroy the perfect contact between the lining, a, and the casing, b, which is nec-
essary to enable the using of the extremely thin material which I employ for the
lining.

"A bath-tub made of a light sheet-metal casing lined with copper, aluminum,
or other light flexible metal hammered, rolled, or pressed into close contact with
its outer casing makes a practically indestructible bath-tub, which will always re-
main smooth and hard, as the lining fits the casing so tightly and closely that it
cannot be bruised.

"As the seams of the bath-tub made in three sections would be very unsightly,
and as it is not desirable to incase a metal bath-tub with wood, I provide feet, I,
having legs, J, extending over and around the flanges and secured to the bath-tub
immediately over and hiding said flanges. These legs not only hide the unsightly
seams, but also serve to strengthen the bath-tub and enable it to be made of very
light material."

The claims involved are as follows:

"(1) As an improved article of manufacture, a bath-tub composed of a smooth
sheet-metal casing having a lining of copper, aluminum, or other light flexible
metal hammered, rolled, or pressed into close contact with its outer casing, sub-
stantially as and for the purpose specified.

"(2) As an improved article of manufacture, a bath-tub composed of a smooth

sheet-metal casing having a lining of copper, aluminum, or other light flexible metal hammered, rolled, or pressed into close contact with its outer casing, in combination with a capping extending over and secured to the upper edges of the bath-tub."

"(5) As an improved article of manufacture, a bath-tub composed of a smooth sheet-metal casing curved in cross-sections, so that its upper edges incline inwardly, a lining of copper, aluminum, or other light flexible metal being hammered, rolled, or pressed into close contact with its outer casing, substantially as and for the purpose specified."

"(7) As an improved article of manufacture, a bath-tub composed of three flanged smooth sheet-metal sections lined with copper, aluminum, or other light flexible metal hammered, rolled, or pressed into close contact with its outer casing, in combination with a capping extending over and secured to the flanges formed on the upper edges of the bath-tub, substantially as and for the purpose specified."

Mr. Park Benjamin, one of the expert witnesses of the complainant, clearly states the advantages of the invention as follows:

"There was wanted a tub adapted for use in dwellings, which should be simple, light, and cheap in construction; which should contain no concealed woodwork; and no wood in any place where that material could do harm, either by decaying or by impairing the surface of the copper. It should be sufficiently strong to withstand any reasonable load or wear to which it might be subjected; it should not be subjected to any injurious deformation due to the expansion and contraction of the material of which it was made, under different degrees of heat of the water ordinarily employed. It should be so arranged and constructed that only the minimum amount of the most expensive material involved in its construction (namely, copper) need be used. It should permit employment of that metal in a thin, flexible state, by supporting that metal everywhere to the best possible advantage, which thereby should prevent not only the formation of ridges or roughness in the copper, but by affording to that copper ample and uniform support everywhere, should give it a resisting quality against blows or the falling of hard objects into the tub, which otherwise it would not possess. And, finally, it should be so constructed that it could be connected to a house system of water supply and drainage so that the pipes and joints adjacent would everywhere be exposed, so that the entire exterior of the tub (bottom as well as sides) should be open to free ventilation and examination.

"Such a tub having these advantages would not only meet a plain and pressing requirement, but because it has these features it would, as a necessary consequence, be a 'sanitary' tub, in every sense of the term.

"That is the problem which the present patentee undertook to solve, and did for the first time in the art solve in the patent in suit."

The defenses are lack of novelty and invention and noninfringement.

Henry P. Wells, for complainant.

William S. Gordon, William R. Baird, and Francis C. McMillin, for defendants.

COXE, District Judge. The tub of the patent is cheap, strong, clean, durable, light, symmetrical and easily moved.

In the evolution of hygienics it is now deemed a desideratum that the plumbing of the bath-room shall be open and exposed to view. Before Booth's invention the tubs used in connection with this sanitary plumbing were either of porcelain or cast iron enameled. The cost of the former was almost prohibitive; the latter, though less expensive, were not durable, the enamel chipping off with use. Booth's invention, for the first time, brought all the advantages of a sanitary tub and open plumbing within the reach of persons of moderate means. If one can afford a bath-room at all he can have a tub which, so far as health and convenience are concerned, combines all the advantages of the most expensive porcelain tub. To

accomplish this result required invention. Many were endeavoring to reach it, some achieved partial success, others failed. Booth was the first to produce the exact thing which the public wanted. The moment it appeared it became popular and the patent has been generally acquiesced in by the trade.

Nothing in the prior art anticipates. The novelty of Booth's tub is hardly disputed by the defendants' expert, but it is said that the prior art shows many structures which approximate it so closely that the changes made by Booth were the work of the mechanic and not the inventor. The court cannot accept this view. The fact that he was the first to produce a tub possessing the features enumerated above, the fact that he succeeded where many failed, entitles him to a place among inventors. Even though there were doubt on the subject the patent should have the benefit of the doubt.

The defendants' tub is almost an exact reproduction of the tub of the patent, the only difference being that they place between the steel casing and the copper lining, sheets of asbestos paper two-hundredths of an inch in thickness. The claims provide for "close contact," and it is argued that they are avoided because the defendants introduce paper between the steel and copper. The fallacy of this view is exposed by the apt and sententious illustrations of the complainant's expert, Mr. Benjamin. He says:

"To aver that a sheet of copper is not in contact with a smooth sheet of steel which supports it, and against which it rests, because a piece of paper is interposed between, seems to be as idle as to assert that a piece of wall paper does not rest in close contact with and is not supported by the wall because an old layer of paper, already attached to the wall, happens to be beneath it. It amounts to asserting the same thing as that no man's hat is in close contact with his head unless he is strictly bald."

The defendants' contention can be sustained only by adopting a rule so rigid and technical that it would, if generally followed, take the life out of a majority of patents. To inform an inventor that he has a valid patent and so construe it afterwards that it is of no more practical use than a page of the Koran, is neither a logical nor an equitable position for the court to assume. It simply offers a premium for infringers to use their ingenuity in discovering evasions which will enable them to make off with all that is of value while the court is juggling with adjectives and punctuation.

If the construction contended for by the defendants is adopted the next infringer will escape by inserting sheets of tissue paper and the third by putting a coat of paint on the casing or lining. Indeed, it would seem to follow as a logical conclusion that "close contact" is prevented by the thin coat of anti-rust varnish which covers the casing. It certainly prevents the steel from actually touching the copper and this is all the defendants' paper does.

The inventor never intended to limit himself to such a strained construction; nothing in the art required it and it is contrary to common fairness and to common sense. Notwithstanding their thin sheet of paper the defendants' casing supports their lining precisely as does the complainant's; it is simply impossible to suggest any functional difference. In the eye of the law they are identical.

No useful purpose will be served by entering at this time upon a critical analysis of the claims.

It follows that the complainant in each case is entitled to the usual decree.