TABER v. MERIDEN BRITANNIA CO. SAME v. SIMPSON et al.
SAME v. R. WALLACE & SONS MFG. CO.

(Circuit Court, D. Connecticut. January 5, 1901.)

PATENTS—INFRINGEMENT—KNIFE BURNISHERS.
    The Taber patent, No. 241,750, for an improvement in machines for burnishing knife blades, construed, and, as limited by the proceedings in the patent office, *held* not infringed by machines made in accordance with the Way patent, No. 293,836.

In Equity. Suits for infringement of a patent. On final hearing.

Charles L. Burdett, for complainant.
William E. Simonds and James H. Webb, for defendants.

SHIPMAN, Circuit Judge. These three cases are based upon the alleged infringement of letters patent to La Gee Taber, No. 241,750, dated May 17, 1881, for an improvement in machines for burnishing knife blades. The patentee died on July 25, 1891, and the complainant is his executrix and sole heir. The suits were commenced on March 14, 1898, and each bill prayed for an injunction and an accounting. The patented invention is an improvement upon the burnishing machine of William O. Way, patented on December 28, 1880, by letters patent No. 235,291, which was a machine containing two burnishers, each one of which burnished at the same time one side of an article, but not the same article. The Taber machine contained two burnishing arms, each provided with a burnisher located on opposite sides of a knife blade held against lengthwise movement, while the burnishers had a reciprocating movement lengthwise along the opposite surfaces of the same blade, being held against the surface of the blade with a yielding pressure. A pair of burnishers for burnishing each side of an article at the same time, when attached to a reciprocating bar, antedated the Way patent of 1880, and the improvement of Taber over any pre-existing device consisted in the fact that the spring which acted upon each burnisher was held against an abutment sufficiently rigid to cause the cushioning effect of the spring to be exercised. No prior burnishing device applied its burnishers to the opposite sides of a knife blade, each burnisher being cushioned by an independent spring, the springs being backed up by abutments which furnished an independence of action to each burnisher; and the improvement was patentable in its character. In the Taber machine the holder for the knife has a transverse feed, so that the blade is moved up and down, and the burnishers gradually burnish from one edge of the blade to the other, as well as from bolster to point. In the Way machine of 1880 the holder is stationary, and the burnishers have a transverse feed at the same time that they are moved lengthwise. The three claims of the Taber patent are as follows:

    "(1) The combination of two hinged burnisher arms, each provided with its burnisher, means substantially such as described to impart a reciprocating movement thereto, with a holder constructed to hold the blade between said burnishers and in the line of movement of said burnishers, mechanism substantially such as described to impart to the holder a movement substantially as described in relation to the reciprocating burnishers, so that during the

reciprocating movement of the burnishers the knife blade is gradually burnished from one edge to the other, substantially as described.

"(2) The combination of two hinged burnisher arms, each provided with its burnisher mechanism, substantially as described, to impart a reciprocating movement thereto, with a holder constructed to hold the blade between said burnishers and in the line of movement of said burnishers, mechanism substantially as described to impart to holder a movement substantially as described in relation to the reciprocating burnishers, so that during the reciprocating movement of the burnishers the knife blade is gradually burnished from one edge to the other, and adjustable stops to prevent contact of the burnishers, substantially as described.

"(3) The combination of two hinged burnisher arms, each provided with its burnisher mechanism, substantially such as described, to impart a reciprocating movement thereto, with holder constructed to hold the blade between said burnishers and in the line of movement of said burnishers, and mechanism substantially such as described to impart to the holder a movement substantially as described in relation to the reciprocating burnishers, so that during the reciprocating movement of the burnishers the knife blade is gradually burnished from one edge to the other, with mechanism substantially such as described to impart forced yielding pressure to the burnishers, substantially as described."

The patentee caused to be made three machines at the factory of Hall, Elton & Co., which are said to have been taken to the factory of the Meriden Britannia Company; and he caused to be made one machine at the factory of R. Wallace & Sons Manufacturing Company, from patterns borrowed from Hall, Elton & Co. Nothing is clearly shown as to the actual use of these original machines, except as to the one built at the shop of Wallace & Sons, which was used experimentally, was found to "chatter" or make waves in the burnishing, and was laid aside; and subsequently machines made like those shown in the patent to William O. Way, No. 293,836, and dated February 19, 1884, were introduced into the shops of each defendant, and have been since used by each. The chattering in the original machine made at Wallace & Sons' factory was obviated by an increased spring action of the abutment arms of the Way machine of 1884, which, in all substantial respects, reproduces the Taber machine, except that the knife holder is stationary while the burnishers have a slow vertical reciprocation.

Taber patentably improved the Way invention of 1880, and Way, in 1884, adopted Taber's ideas, but gave greater spring action to the abutment arms, and retained the stationary character of the knife holder. The question, therefore, becomes one of infringement, and depends upon the construction to be given to the claims of the Taber patent. At the time of Taber's application he evidently intended to claim either a movement of the knife holder, or a vertical reciprocating movement of the burnishers, for he said in his specification:

"As they [the burnishers] pass back and forth from bolster to point, either the blade is moved slowly up or down, or the burnishers are so moved; that is to say, so that, beginning at the back of the blade, the burnishers will gradually work toward the edge until they pass from it."

He then described the means for the upward and downward movement of the holder, and says:

"It will be understood that other means may be employed to cause the burnishers, during their reciprocation on the opposite sides of the blade, to gradually work from one edge of the blade to the other."

In each claim for which he applied he made use of the following language:

"The said burnishers or holder having a movement substantially as described in relation to the reciprocating burnishers, so that during the reciprocating movement of the burnishers they will be caused to gradually work from one edge of the blade to the other, substantially as described."

This language was criticised by the patent office. The letter of the examiner said:

"In all the claims occurs an inaccuracy, viz. the said burnishers or holder having a movement, etc. Neither description nor drawing warrant the allegation that the burnishers have any such movement."

This criticism was accurate, inasmuch as the patentee had not described in terms or shown in his drawing how the burnishers were to be made to move vertically. The patentee therefore modified each claim so that, instead of the clause heretofore quoted, each claim should read as follows:

"Mechanism, substantially such as described, to impart to the holder a movement, substantially as described, in relation to the reciprocating burnishers, so that during the reciprocating movement of the burnishers the knife blade is gradually burnished from one edge to the other, substantially as described."

It is clear that nothing is claimed but mechanism which imparts a movement to the holder in relation to the burnishers, but it is said that mechanism which imparts a vertical movement to the burnisher was a well-known means by which the entire blade was burnished; and the language of the specification is pointed out which declares that other means may be employed to cause the burnishers to work from one edge of the blade to the other. It is not clear that the patentee did not simply intend by this language means other than the handscrew which should move the holder, although he had in his mind a burnishing of the whole blade by the vertical movement of the burnisher or holder. However this may be, the claims of the narrow invention were curtailed, at the request of the patent office, so as to claim only mechanism which imparted movement to the holder; and it is not permissible, in view of the history of the invention, the criticism of the patent office, the omission of the patentee to amend by describing means for the movement of the burnishers, and his amendment of the claims, to say that the claims, as amended, can include mechanism which moves the burnishers, but not the holder. Such a construction would be in violation of the terms upon which the letters patent were issued.

It is further suggested that, in view of the history of the invention, vertical movements of the holder or of the burnishers can be substituted for each other; but the improvement of Taber was a secondary one, and the range of equivalents which he can cover by his patent is correspondingly narrow. The scope of his claim must be limited to the mechanism which is to operate upon the holder.

The three cases were tried upon one record, and it is improper that three bills of costs should be allowed. The bills are dismissed. A bill of costs is to be taxed as for a single case, and each defendant is entitled to a decree for one-third of the amount.