LUDINGTON NOVELTY CO. v. LEONARD et al.

SAME v. FISCHER et al.

(Circuit Court, S. D. New York. November 29, 1902.)

**1. PATENTS—CONSTRUCTION OF CLAIMS—AMENDMENTS IN PATENT OFFICE.**
An element or feature added to a claim of a patent by amendment to meet objections of the patent office in order to obtain a patent must be held essential in a suit for infringement.

**2. SAME—INFRINGEMENT—GAME-BOARDS.**
The Haskell patent No. 602,179, for a game-board, claims 1, 3 and 6 construed, and *held* not infringed.

**3. SAME.**
The Fuller patent No. 666,742, for a game-board, claims 1 and 2 construed, and *held* not infringed.

**4. TRADE-MARKS—DESCRIPTIVE WORD—"CARROMS."**
The word "Carroms" as applied to a game to be played with disks, where the object is not to strike two disks together, but to drive a single one into a pocket, or to the boards on which such game is played, is not so descriptive but that it may be appropriated as a trade-mark. The Haskell registered trade-mark No. 29,775, for the word "Carroms" as applied to game-boards, *held* valid and infringed.

In Equity. Suits for infringement of letters patent No. 602,179, for a game-board, issued to Henry L. Haskell April 12, 1898, and No. 666,742, also for a game-board, granted to F. A., C. D., and F. D. Fuller January 29, 1901, and for infringement of the registered trade-mark "Carroms" (No. 29,775), as applicable to game-boards, and to restrain unfair competition. On final hearing.

Fred. L. Chappell, for complainant.
Taggart, Denison & Wilson, for defendants.

TOWNSEND, Circuit Judge. The claims which it is contended are infringed are as follows:

Of No. 602,179:

"1. The combination of a game-board having a face, a rim projecting above the face, a cushion on the rim, a base-line on each side of the board extending across the board from the innermost portion of a pocket-opening to the corresponding portion of the opposite pocket-opening, and yielding pockets outside the base-line, with sets of disks adapted to be grouped about the center of the face, and disk adapted to be snapped from a base-line to impel the other disks into the pockets either directly or by the deflecting action of the cushion, substantially as described."

"3. In a game-board the combination of a face, a series of pockets, a rim forming the outer boundary of each pocket, and having a central recess for each pocket extending above and below the plane of the face of the board, and adapted to receive the impact of the playing-disk and deflect the same into the bottom of the pocket, substantially as described."

"6. In a game-board the combination of a face, a rim, openings in the face for pockets, a groove in the rim for each pocket below the face, a wire secured by each groove and encircling the openings, and pockets held about the openings by the wires, substantially as described."

¶ 2. Arbitrary, descriptive or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.

Of No. 666,742:

"1. In a game-board, the combination of a plane board; a rim around the same; a space cut in a corner of the board and a groove T, formed in the edge of the board and rim; a hoop E, to rest within the said groove; and a netted pocket through the edges of which the hoop extends, as specified.

"2. In a game-board, the combination of a plane board; a rim around the same; a space cut in a corner of the board; and a groove T, formed in the edge of the board and rim opposite thereto at the corners; a hoop E, to rest within said groove; and a pocket through the edges of which the hoop extends, as specified."

Haskell, the patentee of patent No. 602,179, made a game-board in which flat disks were placed in the center of the board, and the players endeavored, by snapping with their fingers a flat disk against them, to drive the disks into pockets at the corners of the board. He applied for a patent, which was refused.

Plaintiff's brief describes his construction at that time as follows:

"A structure having a comparatively heavy panel with a rim around it; boxes in each corner supported by heavy diagonal blocks. There was no cushion on the rim, no recesses in the rim, and the structure was awkward, heavy, and cumbersome, and not a satisfactory board, owing to the fact that the disks when attempted to be utilized in this way would not be effectively retained or would not be readily lodged in the pockets when propelled with force."

By "panel" is to be understood the board upon which the disks are placed, in distinction from the rim.

Complainant's brief describes Haskell's work, subsequent to the denial of the application for a patent, as follows:

"Haskell continued the work and improved this board. He made a very light panel, put a heavy rim around it, which served as a strong support; placed cushions of felt on the rim, which deadened the noise and increased the resiliency, and, owing to the fact that a heavy rim was around the board, was able to shape into the same depressions for properly deflecting the pieces into the pockets. The pockets he found could be supported by a loop of wire, he having found it unnecessary to put heavy braces across the corners, as he had done in the earlier structure."

The claims of the second application were repeatedly rejected, and finally allowed after amendments of specification and claims. After the first rejection, a claim was filed containing as an element "the base line adjacent to the rim," and this claim was finally allowed, after amending, on the suggestion of the patent office, said element to "a base line on each side of the board, extending across the board from the innermost portion of the pocket opening to the corresponding portion of the opposite pocket opening." Complainant contends that the precise position of this base line is not essential. Inasmuch as the words absolutely fixing its location were inserted in order to obtain a patent after the rejection of the former claim, it must be held to be essential, and, as defendants' board does not contain this base line in this position, the first claim is not infringed.

The third claim was given its present form after repeated rejections, upon citations of different patents claimed to anticipate the recesses there mentioned; and after Haskell had been forced to describe in his specifications certain compound curves, making this recess somewhat different from the others cited. It must, therefore,

be limited to the construction described in the specifications and claim.  In this claim, the central recess for each pocket extends above and below the plane of the face of the board, and in these claims "face" manifestly means the panel or board upon which the disks are moved.  Defendants change the position of their cushion at the pockets, carrying it higher at that point; and complainant insists that this provides a rim which deflects the disks into the pockets, thereby performing the same service as Haskell's recess, and constituting its equivalent.  But Haskell, to obtain his patent, and avoid the anticipations in the patent office, was compelled to rely on that part of his recess which extends below, as well as that above, the plane of the face of the board, and which forms a part of the compound curves relied on by him in obtaining his patent, and cannot now successfully maintain that this feature is not essential.  Defendants' groove does not extend a sufficient distance below the panel to constitute infringement.

It is very difficult to find patentable invention, or, indeed, very great mechanical skill, in the mode of attaching the pockets described in the sixth claim of the Haskell patent.  In this claim, a wire supporting the pockets encircles the opening for the pocket, being fitted into a groove in the rim lower than the face or panel, and, for the remainder of the distance, being attached to the under side of the face or panel.  Defendants' wire, in the construction used when this suit was brought, does not encircle the opening, and only extends part way around.  As far as the rim extends, the pockets are held by the wires, and, for the remainder of the distance, are attached to the board by staples.  Even if the claim involved patentable invention, upon the narrow construction which must be given to this patent, defendants should be held not to infringe.

The Fuller patent was also allowed after repeated rejections and amendments.  The improvements claimed for this patent are described by complainant as follows:

"The object was to have a more substantial fastening for the pocket than had been secured by Haskell or by Williams or any one else.  To accomplish this, the Fullers cut a groove in the edge of the panel opposite the groove in the rim, so that the wire loop could be easily snapped into the same, and by its tension force the loops of the netted pocket into these recesses and retain them securely."

This is a very simple and convenient way of inserting a flexible pocket which may be turned in either direction.  The board of examiners have found that it involved patentable invention.  Even if it does, it must be found that, since the issuing of the patent, defendants have not made or intentionally sold or used an infringing device.  In view of the Archerina construction and the Hall and Bock patents, and the action in the patent office on appeal, a complete hoop must be held to be an essential part of the invention; and this defendants do not use.

The claimed trade-mark is as follows:

"My trade-mark consists of the arbitrarily selected word 'Carroms.' ﹡ ﹡ ﹡ It is immaterial in what form or type the letters of the word appear, and it is observed that the word 'Carroms' has an equivalent in its variant 'Caroms,' or in any such fanciful spelling of the word as 'Karroms' or 'Karoms,' inas-

much as these words have the same root, and, when used in speaking, have the same sound. The word may also be accompanied by explanatory words, as, for example, in the phrase, 'Carroms Game,' or 'Carrom Game.' The essential feature is, however, as I have indicated, the word 'Carroms.'

"This trade-mark I have used continuously in my business since the first day of December, 1892.

"The class of merchandise to which this trade-mark is appropriated is games and toys, and the particular description of goods on which it is used by me is game-boards."

Defendants claim that the word "Carrom" is descriptive, and therefore cannot be a proper subject for a trade-mark. Complainant relies upon the decision of the circuit court of appeals for the Seventh circuit in Williams v. Mitchell, 45 C. C. A. 265, 106 Fed. 168. In that opinion it is held that the word "Carrom" is a descriptive word in billiards, but is not properly a descriptive word in a game to be played with disks, where the object is not to strike two separate disks or balls, but to drive a disk into a pocket. Defendants have introduced a considerable amount of evidence as to the use of the word "Carrom" which was not before the court in the case referred to, and this has required a reconsideration of the matter. Defendants insist that the evidence in this case differs so widely from that in the Williams v. Mitchell Case, supra, that no attention should be paid to that decision. The principal differences thus claimed are: Admissions of Mr. Haskell, who originally registered the trade-mark "Carroms," and of Mr. Bostwick, complainant's expert, on cross-examination, that the word "Carrom" is used in a popular sense to describe one object's hitting and glancing away from another; the use of the word "Carromette" as a name of a game by the Mitchell-Bradley Company in 1872, an argument made by complainant's solicitor when he was defending a former suit by the same complainant as to such use; the use of the words "The Game of Carrom" by the Mitchell-Bradley Company in 1882; the use of the words "Disco, The Great Carrom Game," by Mr. Horsman in 1892; the use of the word "Carrom" as descriptive of certain games of billiards; certain games played with either disks or rings wherein carroms in the strict sense were made,—carroms in the strict sense being the case where one ball strikes another, and then, glancing, strikes a third. It sufficiently appears that the use of the word "Carrom" was never brought into general use by Mitchell-Bradley Company or Horsman, and that it was abandoned by them before it was adopted by Haskell, and neither of them are objecting to complainant's appropriation of it. The use of the word by the Mitchell-Bradley Company closely approximated its use in the strict sense in billiards. It was used by Horsman as descriptive, and not as the name of a game. The popular sense, admitted by Haskell and Bostwick, appears to have been considered in the Williams v. Mitchell Case, where the court says, "for, while a carrom is possible, it is no part of the game, which consists in pocketing the disks, rings or balls." So, in the games in question, where the object is to pocket the disks or to place them in some particular position, and this is accomplished by striking other disks against them, "Carroms," in the popular sense cited, may be used by causing a disk to strike against and glance away from the

rim before striking the disk intended to be pocketed, but this is not sufficient to make the word "Carrom" descriptive of the game, or to prevent the application of the reasoning adopted in Williams v. Mitchell, supra. Upon consideration of the whole evidence, it seems reasonably clear that this word is not so descriptive of complainant's game-board that it could not fairly be adopted as a trade-mark. If the complainant or its assignors had not brought the word into general use as applicable to the style of game-board and games in question here, it is not probable that it would have been generally so used or understood, or that defendants would have made use of it in the way they have. On the whole, it seems reasonably certain that defendants are endeavoring to profit by the reputation gained by the complainant for the class of game-boards and games in question, and, while they may do so by any legitimate means, they should be kept strictly within their legal rights.

A decree may be entered for an injunction in regard to the use of the word "Carrom" or "Carroms" as applied to game-boards, also to games other than those in which the principal object is to score by making points in the manner in which they are made by carroms in billiards, as distinguished from the manner in which they are made in pool.