## JACKSON CUSHION SPRING CO. v. D'ARCY.

(Circuit Court of Appeals, Sixth Circuit. June 13, 1910.)

No. 2,023.

PATENTS (§ 328*)—INFRINGEMENT—SPRING STRUCTURES.

The D'Arcy patent, No. 785,410, for an improvement in spring structures, claim 2, which covers a wire clip for securing spiral springs to a wire frame in spring structures in upholstery constructions, consisting of a wire bent into a double loop with a central and two end arms, each of which is clamped around both the frame wire and spring, while valid, is not of a broad and primary character in view of the prior art, but for a secondary improvement only, and must be limited to the precise construction shown and described in the specification and drawings, with the respective functions of the arms and bases as therein shown, and to a correspondingly narrow range of equivalents. As so construed *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

Suit in equity by Frank P. D'Arcy against the Jackson Cushion Spring Company. Decree for complainant, and defendant appeals. Reversed.

Louther V. Moulton, for appellant.
Fred L. Chappell, for appellee.

Before SEVERENS and WARRINGTON, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This is an appeal by the Jackson Cushion Spring Company, the defendant below, from an interlocutory decree adjudging that claim 2 of letters patent No. 785,410, issued March 21, 1905, to Frank P. D'Arcy, the complainant below, on improvements in springs, is a good and valid claim, and is infringed by the defendant, and enjoining further infringement. The defenses relied on are the invalidity of D'Arcy's patent for want of invention, and noninfringement.

The invention claimed by D'Arcy relates to a wire clip or fastening device for securing spiral springs to a wire frame in spring structures in upholstery constructions. This fastening device is described in claim 2 of his patent as follows:

"2. In a spring structure the combination of a wire frame, spiral springs arranged in said frame, so that portions thereof and of said frame overlap, and fasteners for securing said springs in position in said frame consisting of pieces of wire formed into double loops having comparatively wide bases, the arms of said fasteners being clamped about the frame and springs, for the purpose specified."

The following reproduction of a portion of Figure 1 in the drawings accompanying the specifications, giving "a plan view" of the entire spring structure, shows the method of attaching the spiral springs to

the frame wires by the fastening device in question, which is lettered C:

Figure 3 in the drawings giving "a plan view of the fastening device C," and showing its "double loop" form, is reproduced below, except that in the reproduction the letters, b and b, are added to designate the bases of the double loop referred to in the claim:

The specifications refer to this fastening device as follows:

"The several parts are secured together by the fastening device C, preferably made of wire formed in a double loop, as clearly appears in Fig. 3. The parts are placed together in proper relation and the fastener C clamped upon the same by bending the central arm, c, and the end arms, c' c', about the parts to be united. This fastening arranged in this way prevents any rolling action between the parts and holds them securely in position. I am aware that parts in springs have been united by a wire fastener having two arms, as c' c'; but such structures have proved unsatisfactory in that the parts slip and roll upon each other and the spring when used soon gets out of shape. My improved structure, however, by making use of three or more connected wires, unites the parts securely, and they may be subjected to the most severe usage without displacing the parts."

It is clear that the term "double loop," as used in the specifications and claim, refers to the form of the wire fastener shown in Figure 3 before its arms are bent so as to clasp together the wire frame and springs, it then being in the form of a double U with flattened bases, the doubled portion of the wire in the center forming the central arm of the fastener, c, the bent portions of the wire at each end forming the outer arms, c' and c', and the three arms being connected by the bases, b and b, of the double loop; this double loop fastener being then used to attach the spring to the frame wire by clamping each of its three arms around both the spring and frame wire as shown in Figure 1.

In D'Arcy's original specifications the first claim referred broadly to "fasteners, C, having three or more arms for securing the several parts together, as specified," and the second to "fastening devices, C, having arms, c, c', c', adapted to clasp the parts to be joined, substantially as described"; but neither of the claims referred specifically to the double loop feature of the fastening device.

These claims were rejected by the examiner on reference to various prior patents, including Staples, No. 572,581, Blecher, No. 554,977, Jackson, No. 608,048, and Kuersten, No. 694,391. The fastening devices in these four prior patents are shown by the following illustration:

In the Staples device, which is for improvements in upholstering, the wire clip is not made in a double loop with a central arm, as in the D'Arcy device, but in a straight piece with two end arms, each of which is clamped about the spring and frame wire. The spring and frame wire are not clamped together in the center; and there is a second circular wire clip which embraces the first clip and the frame wire. In the Blecher patent, which does not relate to spring structures, but is a device for clamping fence slats to longitudinal wire strands, the wire fastener shows a double loop, as in the D'Arcy patent. However, none of the arms of this double loop are clamped around both the fence wire and the slat, the central arm being clamped around the fence wire alone, and the end arms twisted around the fence wire alone; and the slat, which is placed vertically to the fence wire with a hole through which the central arm of the loop may pass, is not clamped by any of the arms of the loop, but is held in place between the fence wire and the bases and side arms of the loop. Both the Jackson and Kuersten patents, which are spring structures, show sheet metal clips with multiplied extensions, which correspond in a sense to the arms of the loop in D'Arcy's device. However, in each of these devices the projections corresponding to the arms of D'Arcy's clip do not clamp together the spring and wire frame as in D'Arcy's device, but enfold the spring only, the frame wire being held by an extension of the sheet metal clip itself in the opposite direction to the extensions holding the spring, and the spring and frame wire being held together by the intervening body of the metal clip itself.

After the rejection of the original claims by the examiner on account of the foregoing and other references, D'Arcy made several successive amendments to his claim, as a result of which claim 2 was finally stated as above set forth, embodying specifically his claim for fasteners to secure the springs in position in the frame "consisting of pieces of wire formed into double loops having comparatively wide bases, the arms of said fasteners being clamped about the frame and springs, for the

purpose specified." Thus stated, the examiners in chief, on appeal, reversed the decision of the examiner, saying:

"None of the patents cited by the examiner shows the exact structure covered by the appeal claims, in which the double loops of the fasteners are the real locking means. The patents to Kuersten and Jackson show sheet metal fastening devices, and the remaining patents show wire fastening devices for the parts of wire articles. In each of the revealed constructions, however, the loops are, as will be seen, not the real clamping means for the members which are secured together."

The wire fastener manufactured and sold by the Jackson Cushion Spring Company, which the court below held to be an infringement of D'Arcy's device, is also used for securing the frame wire and springs in a spring structure in upholstering construction. Its form and use are shown by the following illustration:

In this fastener the "double loop" of D'Arcy's device appears, and as in D'Arcy's device the central arm composed of the double fold of wire, incloses, though in a slightly less degree, both the frame wire and the spring. This device shows, however, this difference from D'Arcy's device, namely, that the outer arms of the double loop do not inclose both the frame wire and the spring, but clamp only the frame wire, the spring being embraced and held in position against the frame wire solely by the bases of the two loops, which are curved over so as to encircle the spring wire.

Our conclusions are as follows:

1. In the prior state of the art, as disclosed in the earlier patents above referred to, and those to Bates, No. 701,461 and Gail, No. 639,225, to which detailed reference need not be made, the use in spring structures of a wire fastener having bent arms to secure the frame wire and spring, was not new; and the Blecher patent had disclosed in the kindred art of wire fencing the use of a wire fastener made in the form of a double loop. D'Arcy's claim, however, in its application to spring structures, differs from all earlier devices in the use of an integrally made fastener, consisting of a wire bent into a double loop as shown in Figure 3, with three arms, each of which directly and of itself performs the office of clamping or locking the spring and the frame wire together, and in which the wide bases of the loop serve as spacing members that keep apart the points of connection made by the clamping arms. This "double loop" fastener, with the respective functions of its bases as spacing members and its arms as clamping members, unites the spring and frame wires securely and gives stability to the structure. It was this form of a "double loop" fastener, with "comparatively wide bases" and with three arms clamping both the frame and the springs, which was claimed as new in D'Arcy's patent; and it was the "exact structure" of this device which was referred to by the examiners in chief in stating that "the double loop of the fasteners are the real locking means" distinguishing it from prior devices. However, in view of the prior state of the art, in which D'Arcy was not a pioneer in inventing a wire fastener to secure the parts of spring structures to-

gether, but merely devised a new form to accomplish this result, and in view of the express language of his claim and the description in his specifications, we are of the opinion that his invention did not extend broadly to the use of a wire fastener made in the form of a double loop, without regard to the functions of its several parts—a double loop wire fastener having previously appeared in the Blecher wire fence device—but was restricted to the form shown and described by him in his specifications and drawings, with the respective functions of the arms and bases of the double loop as therein shown, and must be limited to the structure therein disclosed. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Burns v. Meyer, 100 U. S. 671, 25 L. Ed. 738; Duff v. Sterling Pump Co., 107 U. S. 636, 2 Sup. Ct. 487, 27 L. Ed. 517; Wells v. Curtis (Sixth Circuit) 66 Fed. 318, 13 C. C. A. 494; Ludington Novelty Co. v. Leonard (C. C.) 119 Fed. 937. Thus restricted, we are of opinion that his claim disclosed patentable novelty and is valid.

2. We do not, however, concur in the view of the court below that the wire fastener above described as being manufactured and sold by the defendant, and which is the only one of the defendant's devices involved under the present appeal, comes within the range of equivalents, and constitutes an infringement of D'Arcy's device. It is true that this device of the defendant consists, as does D'Arcy's, of a wire fastener integrally made, bent in the form of a double loop with three arms and connecting bases, and in which the central arm is clamped more or less completely around both the frame wire and spring. However, in the defendant's fastener the end arms of the loop are not clamped around both the frame wire and the spring as in D'Arcy's device, but around the frame wire alone; and in the defendant's fastener the spring is embraced only by the curved bases of the loop and thus held in place against the frame wire, while in D'Arcy's device the engagement of the spring by the bases of the loop is merely incidental. The function of holding the spring against the frame wire, which in the D'Arcy patent is, in effect, performed entirely by the clamping arms, is thus, in the defendant's fastener, performed by the curved bases of the loop, which are not used primarily as spacing members to keep the points of connection apart, but as the substantial enfolding members of the spring itself. The two devices thus show substantially different functions and uses of both the end arms and bases of the double loop. However, for the reasons above stated, the D'Arcy device cannot be held to cover every double loop wire fastener, the central arm of which is used as a clamping member, without regard to the uses and functions of the end arm and bases of the loop and the method by which they enfold the spring and frame wire, but must be limited to the structure shown in his specifications and drawings. And since D'Arcy's invention is not of a broad and primary character involving entirely new mechanical functions, but is a secondary improvement marking only a small step in the art, and with comparatively small meritoriousness in the improvement, the range of equivalents is correspondingly narrow and the doctrine of equivalents should be less liberally applied in his favor. Miller v. Eagle Mfg. Co., 151 U. S. 86, 14 Sup. Ct. 310, 38 L. Ed. 121; Bundy Mfg. Co. v. Detroit Time Register Co.

(Sixth Circuit) 94 Fed. 525, 36 C. C. A. 375; King Axe Co. v. Hubbard (Sixth Circuit) 97 Fed. 795, 38 C. C. A. 423; Taber v. Meriden Brittannia Co. (C. C.) 106 Fed. 83. Applying this rule we are of opinion that the defendant's device is not a mere colorable departure from the D'Arcy device coming within the range of permissible equivalents, but involves a substantial departure from the specific structure disclosed in the D'Arcy patent, to which alone his claim is valid, and hence does not constitute an infringement. Duff v. Sterling Pump Co., supra.

3. It is to be noted that this is not an appeal from a preliminary injunction, but is, as above stated, an appeal from an interlocutory injunction entered at a hearing on pleadings and proofs, leaving only the ascertainment of profits and damages preparatory to a final decree. This is said in explanation of the extended consideration we have given to the merits.

That part of the decree which awards an injunction must be reversed, and the cause will be remitted for further proceedings.