PENNSYLVANIA RUBBER CO. v. DREADNAUGHT TIRE & RUBBER CO.

(District Court, D. Delaware. July 24, 1915.)

No. 330.

1. TRADE-MARKS AND TRADE-NAMES ⊂⊃3—TRADE-MARK—WHAT IS—"VACU-UM"—"SUCTION."

An automobile tire, the tread of which consisted of four or five circular rows of cup-shaped rubber projections, was called. a "vacuum cup" tire, and it was advertised that the suction hold of the vacuum cups would prevent skidding. *Held*, that the name was merely descriptive, meaning no more than suction cups, for the expressions "vacuum" and "suction" are practically synonymous, although suction may be the result of vacuum, and hence there could be no trade-mark either in "vacuum cup" or "vacuum tread."

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. ⊂⊃3.

For other definitions, see Words and Phrases, Suction.]

2. TRADE-MARKS AND TRADE-NAMES ⊂⊃70—UNFAIR COMPETITION—WHAT CONSTITUTES.

Complainant's tires had on each side the words "Pennsylvania Vacuum Cup Oil-Proof," preceded and followed by a monogram, consisting of the capital letters "V" and "C," and also the words "Pennsylvania Rubber Co,. Jeannette, Pa.," and numerals indicating the dimensions of the tire. Defendant's tires had on one side the words "Made by the Dreadnaught Tire & Rubber Co., Baltimore, Md., and numerals indicating the dimensions, and on the other side the words "Vacuum Tread" and similar numerals. The wrappers were equally dissimilar, and the color of defendant's tires was different from those of complainant's. *Held*, that defendant was not guilty of attempting to palm off its tires as those of complainant, and hence would not be restrained, though a party not having a trade-mark in a name will be protected, where another attempts to use it to defraud the public into believing his goods were made by the other.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ⊂⊃70.]

3. TRADE-MARKS AND TRADE-NAMES ⊂⊃70—UNFAIR COMPETITION—WHAT CONSTITUTES.

Defendant sold its "seconds," which were defective tires sold without a guaranty, to a store near complainant's factory, without branding them as seconds and without removing the words "Vacuum Tread," although it removed its name. Complainant's tires were on sale in the same vicinity. *Held*, that defendant was guilty of unfair competition, in putting it within the power of the retailer to deceive the public, and hence should either obliterate the words "Vacuum Tread" from its tires, or indicate that the tires were made by defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ⊂⊃70.]

4. TRADE-MARKS AND TRADE-NAMES ⊂⊃70—UNFAIR COMPETITION—LIABILITY.

Where a manufacturer puts it within the power of a dealer to deceive the public, and the public is deceived into believing that the manufacturer's goods were made by another, the manufacturer is guilty of unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ⊂⊃70.]

5. TRADE-MARKS AND TRADE-NAMES ⊂⊃93—UNFAIR COMPETITION—FRAUD—WHAT CONSTITUTES.

Fraud, constituting unfair competition, must be satisfactorily proven.

[Ed. Note.—For other cases, see Trade-Marks, and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. ⊂⊃93.]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TRADE-MARKS AND TRADE-NAMES ⬪95—UNFAIR COMPETITION—INJUNCTION —RIGHT TO.

An isolated act of fraud for which the law would furnish an appropriate remedy would not justify a general restraint of a legitimate business under the law of unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. ⬪95.]

7. TRADE-MARKS AND TRADE-NAMES ⬪93—UNFAIR COMPETITION—ACTIONS— EVIDENCE.

Evidence held insufficient to show that defendant tire company was guilty of fraud and unfair competition in disposing of its tires as those of complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104-106; Dec. Dig. ⬪93.]

8. TRADE-MARKS AND TRADE-NAMES ⬪98—UNFAIR COMPETITION—ACCOUNT-ING—RIGHT TO.

In a suit for unfair competition, where it did not appear that any one desiring to obtain complainant's tires was misled into purchasing defendant's, no accounting will be ordered.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 112; Dec. Dig. ⬪98.]

In Equity. Bill by the Pennsylvania Rubber Company against the Dreadnaught Tire & Rubber Company. Decree for complainant in part.

Christy & Christy, of Pittsburg, Pa., and Ward, Gray & Neary, of Wilmington, Del., for complainant.

Harry E. Karr, of Baltimore, Md., and Marvel, Marvel & Wolcott, of Wilmington, Del., for defendant.

BRADFORD, District Judge. The Pennsylvania Rubber Company, a corporation of Pennsylvania, has brought its bill against the Dreadnaught Tire & Rubber Company, of Delaware, charging the defendant with unfair competition in trade, and praying for an injunction and an accounting. The bill avers, in substance, among other things, that the complainant has long been a manufacturer of rubber tires for vehicle wheels; that, among other things, it produces anti-skid tires for automobile service of a peculiar style and calls them Vacuum Cup tires; that such tires are and have long been widely and favorably known as Vacuum Cup tires or Vacuum Cup Tread tires; that the complainant's trade in such rubber tires is large and valuable to it; that the name Vacuum Cup is and long has been established in the rubber tire industry as the name of the complainant's product only; that its rights therein and connected therewith have been universally recognized and respected; that the defendant recently and since the acquisition by the complainant of its rights above referred to has put upon the market anti-skid automobile tires of substantially the same peculiar style as the complainant's above referred to, and marked and advertised and is marking and advertising them as Vacuum Tread tires; that the effect of such action on the part of the defendant is to lead the purchasing public to believe that such tires so called, marked and advertised, are the product of the complainant; that the defendant's agents

⬪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and retail dealers in the defendant's tires have sold the same as and for the complainant's Vacuum Cup tires; that the defendant's intention in adopting the words Vacuum Tread as and for its tires has been and is to take advantage of the reputation acquired by the complainant in its manufacture and sale of Vacuum Cup tires, and thereby to represent its tires as the tires made by the complainant; that the complainant has given the defendant written notice of its rights in the premises and requested that defendant's acts herein complained of cease; and that while the defendant has acknowledged the receipt of such notice the acts complained of continue. The complainant prays that the defendant, its officers, etc., be enjoined from selling or offering for sale any vehicle tires under the name Vacuum Tread or under any other name so nearly resembling the name Vacuum Cup as to cause confusion in trade and from selling vehicle tires of the defendant's manufacture in response to orders for Vacuum Cup tires or for tires under any name so closely resembling the name Vacuum Cup as to cause such confusion; that damages be awarded to the complainant to be computed by a master; and that an account thereof be taken. The defendant in its answer denies that the tires made by it are of substantially the same peculiar style as the complainant's tires, or that the purchasing public is being misled in the premises either by the style of the tire or the words used descriptively of them or otherwise, or that the defendant's agents and dealers with its knowledge or consent have sold its tires as and for the tires of the complainant, but on the contrary avers that the defendant's tires are of a pattern, color, design and style so different from those of the complainant as to be easily and readily distinguishable from them; that the color of the complainant's tires is brown while that of the defendant's is light gray; that the defendant's tires are marked, advertised and sold as "Dreadnaught Vacuum Tread Tires"; that they are sold at a lower price than the complainant's tires and are better than them; that while the complainant's tires are guaranteed to give but 4,500 miles of service those of the defendant are guaranteed to give 5,000 miles of service; that the intention of the defendant has been to distinguish its tires from any other tire and to build up a separate trade and a valuable good will, founded upon a superior tire at a lower price; that the use of the word "Vacuum" is not new but has been used descriptively when applied to the various makes of tires wherein the principle of a vacuum or suction is used to prevent skidding; that the word "Tread" is a term universally applied to that portion of a pneumatic tire which comes in contact with the roadway; that automobile tires are known to the purchasing public by the name of the manufacturer thereon and not by the terms descriptive of their various rough treads; that the defendant's tires are advertised and marked in large letters of distinctive design "Dreadnaught"; that the complainant advertises tires bearing the monogram "V C" together with the words "Oil-Proof, Vacuum Cup, Non-Skid," while the defendant's tires bear the words and are advertised as "Dreadnaught Vacuum Tread" tires, the word "Dreadnaught" always appearing prominently and conspicuously; and that the defendant is in good faith engaged in the manufacture and sale of automobile tires in Baltimore,

and the sale of the same throughout the country, and is employing in the said industry large numbers of men.

[1] It is somewhat remarkable that, while the counsel for the complainant, both in their oral argument and in their printed brief, have strenuously insisted that the evidence presents a case of infringement of a common law trade-mark consisting of the words "Vacuum Cup," as well as that of unfair competition in trade, the term "trade-mark" does not once occur in the bill, and from beginning to end there is not the slightest suggestion in it that the words "Vacuum Cup" denote anything of the kind. The case made by the bill and denied by the answer is one of unfair competition in trade pure and simple. The bill does not attempt to set forth the essential elements or prerequisites of a trade-mark. There is not even any allegation that the complainant was the first to adopt and exclusively appropriate the words "Vacuum Cup" in connection with rubber anti-skid tires, or in any other connection. The bill evidently was prepared diverso intuitu, and the claim now made of a trade-mark consisting of the words "Vacuum Cup" strongly impresses this court as an afterthought. There are several facts which confirm this impression. A short time prior to the institution of this suit and as a preliminary to it the counsel for the complainant wrote to the defendant, August 3, 1914:

"Our client, Pennsylvania Rubber Company, lays before us the information that you are advertising and selling tires under the phrase 'Vacuum Tread.' We write to give you notice that the Pennsylvania Company considers the phrase 'Vacuum Tread' such a near resemblance to the phrase 'Vacuum Cup' as to be calculated to deceive, and that they will not countenance other advertisement and sale of tires under the name 'Vacuum Tread.'"

If the counsel for the complainant understood or had been informed that the defendant in using the words "vacuum tread" was infringing any supposed trade-mark right of the complainant in or to the words "vacuum cup" in connection with the manufacture and sale of the complainant's product, it seems unaccountable that in the above letter, written shortly before the filing of the bill and intended to complain of the alleged grievance or wrong suffered by the complainant at the hands of the defendant, there should not have been the slightest reference to trade-mark infringement, and that the communication should have had reference exclusively to unfair competition in trade. Further, it does not appear from the evidence that the complainant in any circular, advertisement, letter or other communication before the court at any time stated directly or indirectly that it had a trade-mark consisting of the words "vacuum cup" in connection with its tires, or in any other connection. It is true that the complainant is the owner of a trade-mark, registered February 20, 1912, which is applied to its tires by being embossed in the substance thereof, and also by being affixed to such tires or the package containing them by means of a printed label bearing it; the trade-mark consisting of a monogram composed of the capital letters V and C arranged in peculiar and characteristic form. But it is not charged or intimated by the complainant that this trade-mark has been infringed by the defendant or through its procurement, or by any other person or persons.

The Vacuum Cup tire has a tread on which there is a series of rub-; ber cups extending in four or five rows around and circumferentially of the periphery of the tire, by means of which when the tire is in use a sucking action is set up tending to prevent skidding. The words "vacuum cup" as applied by the complainant to its anti-skid rubber automobile tires is used purely in a descriptive sense. This is the natural and obvious meaning of the phrase when so applied. That it is employed in such descriptive sense appears, not only from sundry statements made by or on behalf of the complainant, but from the manner in which the words "vacuum" and "suction," and other equivalent expressions, have been used in connection with treads of rubber tires and their construction in patent descriptions and other documents pertinent to the subject-matter of skidding, both before and after the adoption and application of the phrase by the complainant in 1909. A "vacuum cup" is equivalent to a "suction cup." A vacuum, either total or partial, in a rubber cup necessarily results in suction, and no suction exists save through a vacuum, total or partial. The complainant's expert Browne, in answer to the question, "What is the difference between 'vacuum cup' and a 'suction cup'?" answers, "There is no difference;" and further states that "suction is practically the same as vacuum; that is to say, they both of them involve rarefication of air. Perhaps, technically speaking, 'suction' is the effect of 'vacuum,'" and that they are "substantially synonymous." The general manager of the complainant testifies as follows:

"X. Are the words 'Vacuum Cup' descriptive of your tire? A. I should think it was, yes. X. A descriptive name of it? A. Yes, I think it is descriptive. X. Will you kindly explain to the court what the function of the cup is, and what it does? A. In creating a vacuum—I could best explain it, I think, by saying that the action of the cup is exactly the same as the action of the little patented hat holders that were out as novelties. Most every one has seen those. It had a little hook on the end of a little cup, and you placed it against the window, or any smooth surface, and it held. In creating a vacuum the cup grips the surface of the road. X. It must create a vacuum to grip the surface of the road, mustn't it? A. That is the principle, yes."

The Motor for January, 1912 (Complainant's Exhibit No. 9), states with respect to the Vacuum Cup tread manufactured by the complainant:

"This tire obtains its name from the shape of the tread, which is formed from a series of thick rubber cups set close together. These are so designed that they obtain a suction hold on the road surface and prevent any tendency to skid on wet asphalt or other slippery surfaces."

The Motor Age of January 30, 1913, offered in evidence by the complainant (Exhibit No. 11) states:

"In addition to the plain tread, the non-skid tire known as the Vacuum Cup tire, characterizes the Pennsylvania Rubber Co.'s products. The tread of the Vacuum Cup is formed of a series of rubber cups, four in a row, extending around the tire. There is a suction action set up when the tire is in use on a motor car and this is said to prevent any tendency to skid."

Automobile Topics of January 14, 1911 (Complainant's Exhibit No. 5), states:

"Pennsylvania clincher tires in plain and vacuum cup treads as well as aeroplane tires are shown by the Pennsylvania Rubber Company of Jean-

nette, Pa. The vacuum cup tread tire is made of Para rubber reinforced with Sea Island cotton fabric. It gets its name from the series of raised discs on the tread; these are semi-spherical in shape and at the axis they are indented like a cup, hence their name."

Automobile Topics of January 13, 1912 (Complainant's Exhibit No. 8), says of the tread of the Vacuum Cup tires:

"This tread consists of five circular rows of cup-shaped rubber projections surrounding the surface of the tire. The individual cups of adjoining rows are staggered, and each is moulded on a tread of regular thickness so that the amount of rubber used is increased, rather than diminished by the projections and indentations. These cup-shaped projections are designed to hold the road surface with which they come in contact with a suction grip due to the fact that the pressure of the weight forces the air out of the hollow space. This prevents skidding and forward slipping," etc.

So the complainant in an advertisement in the Motor for May, 1913 (Defendant's Exhibit No. 33), relative to its Vacuum Cup tires, says that "the suction hold of the vacuum cups, guaranteed to prevent skidding on wet or greasy pavements," etc. Also in an advertising pamphlet (Defendant's Exhibit No. 29) the complainant says with reference to its Vacuum Cup tread:

"The suction principle of skid prevention, reduced to practice through the passive vacuum cups moulded on the tread, has fully vindicated our original claim for having invented the only genuinely effective non-skid tires."

The descriptive portions of numerous patents, domestic and foreign, furnish convincing evidence of the descriptive character of the phrase "vacuum cup" as applied to the treads of rubber tires; the matter so set forth being required by law to be truly descriptive. In British patent No. 20,669, A. D. 1896, for improvements in covers for pneumatic tires (Defendant's Exhibit No. 13), it is stated:

"Our improved cover effectually prevents slipping, as the ring-like projections form suckers when wet, the center line of them coming in contact with the road, or track when going straight, and the side lines when turning a corner, thus affording the rider perfect safety at all times."

In patent No. 582,194, granted in 1897 (Defendant's Exhibit No. 11), for a pneumatic tire reference is made in the description to "the grip resulting from the rarefied air in the cells due to the compression of the walls of the cells, which causes a partial vacuum to be produced, so that the suction resulting therefrom will establish a firm hold of the tire on the ground, floor, street or other place where it rests, preventing lateral slipping as well as slipping in the direction of travel." In British patent No. 4,790, A. D. 1905, for improvements in tread surfaces for motor car, cycle and like vehicle tires (Defendant's Exhibit No. 12), it is said:

"I adopt a series of cup shaped projections around the periphery of the tyre, the diameter of each projection to be the width of the road tread of the tyre to which it is attached. Each projection to be separated by a space sufficient to allow the expansion of each cup as they come in contact with the road. Each cup acting independently of each other creates a suction or vacuum sufficiently holding to keep the wheel in a straight course."

In patent No. 908,275, granted in 1908 (Defendant's Exhibit No. 18), for improvements in tires, the description contains the following statement:

"This invention relates to non-skid tires which are provided with circular recesses in the tread to act as suction chambers."

In patent No. 917,612, granted in 1909, for an anti-skidding tire (Defendant's Exhibit No. 15), reference is made to recesses in the tread of the tire which "act as suction chambers when coming in contact with the road," etc. In patent No. 928,868 (Defendant's Exhibit No. 17), granted in 1909, it is said:

"The object of the present invention is to provide a pneumatic or other rubber tire with a tread surface possessing the advantages of the continuous flat tread surface, but which avoids the above mentioned disadvantages, and which further enables recesses or the like to be provided in the tread at intervals so that a suction action can be set up to increase the resistances to skidding."

In patent No. 929,632 (Defendant's Exhibit No. 28), granted in 1909, for a tire tread provided with rubber cups, each cup as the tread rolls over the roadway was recognized and claimed as "standing alone and acting independently from the others in creating vacuum and maintaining a suction contact with the road." It is as unnecessary as it would be tedious to refer to other advertisements or patents in support of the plain proposition that the phrase "vacuum cup" as used in connection with the complainant's non-skid rubber tires, is not an arbitrary or fanciful expression or symbol, forming the legitimate subject-matter of a common law trade-mark, nor merely suggestive, but is truly and purely descriptive. It should be sufficient to accept the statement contained in Complainant's Exhibit No. 5 touching the "Vacuum Cup" tread tire:

"It gets its name from a series of raised discs on the tread; these are semi-spherical in shape and at the axis they are indented like a cup, hence their name."

It is admitted that this case is not controlled or affected by the act of February 20, 1905, touching the registration of trade-marks (33 Stat. 725); or any of its amendments, and that the question of trade-mark or no trade-mark is not determined by any statutory enactment. It is further admitted that the defendant has a right to manufacture and sell rubber automobile tires belonging to the same class and substantially the same in construction and operation as the complainant's tire, if it does not use the word "vacuum" in connection with them. In other words, the contention is that while the defendant is at liberty to make and sell the article it cannot designate it by a phrase, not merely suggestive, but truly and peculiarly descriptive of its construction and operation. On the settled principles of trade-mark law this contention, I think, cannot be sustained. The complainant was not entitled to appropriate and monopolize to the exclusion of others descriptive words properly applicable to non-skid rubber tires operating by vacuum or suction. At and before the time the complainant adopted the words "vacuum cup" in 1909 that phrase was and ever since has been merely descriptive as applied by it; and the words "vacuum tread" were and are at least equally descriptive and as such open to use by all manufacturers and vendors of rubber automobile non-skid tires. Those phrases were not arbitrary, fanciful, symbolical or merely suggestive, and were not the

subject of any exclusive proprietary right in them as applied to such tires—an essential and distinguishing feature of a trade-mark proper. An instructive case in this connection is British Vacuum Cleaner Co. v. New Vacuum Cleaner Co., 2 L. R. Ch. Div. (1907) 312, where it was held that the words "Vacuum Cleaner" were descriptive and not the subject of exclusive appropriation. There are a number of cases where words or phrases suggestive of the qualities or characteristics of an article, but not descriptive of it or of its function or operation, have been held to be the subject of exclusive appropriation as trade-marks. In Globe-Wernicke v. Brown (C. C.) 121 Fed. 185, Judge Acheson held that the word "Elastic" was not really descriptive of a bookcase or filing cabinet constructed in sectional parts, saying that "in no true sense is such an article elastic"; that the word was merely "figurative" or "suggestive," and hence was the subject of exclusive appropriation as a valid trade-mark. So in Ludington Novelty Co. v. Leonard (C. C.) 119 Fed. 937, Id., 127 Fed. 155, 62 C. C. A. 269, which is admitted by the counsel for the defendant to be "nearer to the case at bar than any other known to us," it was held by Judge Townsend that the word "carroms" as applied to a game played with disks where the object was not to strike two separate disks, but to drive a single one into a pocket or to some particular position on the board on which such game was played, could be appropriated as a trade-mark—"carroms in the strict sense being the case where one ball strikes another, and then, glancing, strikes a third." The circuit court of appeals for the second circuit in affirming the decree below said:

"It by no means follows that because carroms occur during the progress of a game, it can be fairly or intelligently described as a carrom game. Carroms, in the broad sense, occur in tennis, hockey, croquet, curling, polo, and golf. Even in foot ball carroms of an exceedingly strenuous character are not infrequent. But no one, with the slightest reputation for accuracy, would think of employing the word as descriptive of these or other kindred games."

In the foregoing two and in similar cases descriptive words were used in connection with the article to which they were applied arbitrarily in a non-descriptive or inaccurately descriptive sense, and were, therefore, subject to appropriation as trade-marks on the same ground on which mere symbols, fanciful words and figurative expressions may be sustained as such. But the case in hand is not the case of the use of descriptive words in a non-descriptive sense, but purely descriptive. The words "vacuum cup" and "vacuum tread" must be taken in connection with the rubber automobile non-skid tires to which they are applied, and when so taken can be nothing else than descriptive. They are as purely descriptive as "suction cup" or "suction tread" would be. Whatever bearing the use of "vacuum cup" and "vacuum tread" may have upon the question of unfair competition in trade, it seems clear neither of those phrases can constitute a trade-mark. But even on the assumption of the existence of a trade-mark in either of them, the bill, as before stated, does not, directly or indirectly, set up such trade-mark.

[2] The complainant, however, charges and relies on unfair competition in trade on the part of the defendant. The doctrine of unfair

competition in trade rests upon the ground that it is inequitable that one should palm off his goods on the public as those of another. Such unfair competition as distinguished from infringement of trade-marks does not involve the violation of any exclusive right to the use of a word, mark or symbol. A name or phrase may be purely generic or descriptive or indicative only of style, size, shape or quality, and as such open to the public, yet there may be unfair competition in trade by an improper use of such name or phrase. Two rivals in business competing with each other in the same line of goods may have an equal right to use the same name or phrase in connection with similar articles produced or sold by them respectively; yet if such name or phrase was used by one of them before the other, and by association has come to indicate to the public that the goods to which it is applied are of the production of the former or of superior quality or excellence resulting from care or skill observed in their manufacture, production or selection, the latter will not be permitted, with intent to mislead the public, to use such name or phrase in such manner by trade-dress or otherwise as to deceive or be capable of deceiving the public as to the origin, manufacture, ownership, production or selection of the articles to which it is applied; and he may be required when using such name or phrase to place on articles of his own production or the packages in which they are usually sold something clearly denoting the origin, manufacture, ownership, production or selection of such articles, or negativing any idea that they were produced or sold by the former. In determining the question of unfair competition by a manufacturer in imitating the name, label or dress adopted by a competitor under which the article is sold at retail, the material inquiry is, not so much whether jobbers or dealers would be deceived, but whether the resemblance is such as is calculated and intended to deceive the ultimate purchaser of ordinary intelligence using ordinary care. And it should be borne in mind that while it is a wholesome doctrine that equity will restrain unfair competition in trade, it should, as stated by the circuit court of appeals for this circuit in Lare v. Harper & Bros., 86 Fed. 481, 30 C. C. A. 373, be "applied with caution, lest, through possible misapplication, healthful and honorable competition be defeated." Deferring for the moment the consideration of the disposition of its "seconds," has the defendant otherwise been guilty of unfair competition in trade? The Vacuum Cup tire of the complainant has on each of its sides in raised rubber letters the words "Pennsylvania Vacuum Cup Oil-Proof" preceded and followed by the above mentioned monogram consisting of the capital letters "V" and "C," and also the words "Pennsylvania Rubber Co., Jeannette, Pa.," and numerals indicating the dimensions of the tire. The words "Pennsylvania Vacuum Cup" are in large and prominent letters and are naturally the first to be noticed by any one examining or glancing at the side of the tire. The "Vacuum Tread" tire of the defendant has on one of its sides in raised rubber letters the words "Made by The Dreadnaught Tire & Rubber Co., Baltimore, Md.," and numerals indicating the dimensions of the tire; and on the other side of the tire, also in raised rubber letters, the words "Vacuum Tread" and similar numerals. The words "The Dreadnaught Tire & Rubber Co." and "Vacuum Tread" are in

large and prominent letters and are naturally the first to be noticed by any one examining or glancing at the sides of the tire. Even aside from the evidence in the case I do not perceive how any one not grossly ignorant or careless could be misled by anything appearing on the defendant's tire into a belief that it was the tire of the complainant. Certainly the words "Made by The Dreadnaught Tire & Rubber Co." were not placed on the defendant's tire for the purpose of deceiving. Those words are virtually a bold announcement that the tire is not the tire of the complainant, and are sufficient to so inform any reasonable purchaser who keeps his eyes open when buying a tire not enclosed in its package. The package containing the complainant's tire has on each side in large and unmistakable type the word "Pennsylvania" in connection with the monogram hereinbefore mentioned. The package containing the defendant's tire is of a different color and has running completely around its periphery the words and figures "Dreadnaught Tires 5000 Miles" several times repeated. It is quite as difficult to conceive that any ordinarily intelligent and careful purchaser should be misled by the package of the defendant into a false belief as to its contents as that he should be deceived by seeing the defendant's tire when unwrapped. There is not the slightest evidence so far as the appearance of the defendant's tire or its package is concerned of any design or intention on its part that either of them should be mistaken for the tire or package of the complainant. It is further to be observed that it is reasonable to expect closer attention on the part of a retail purchaser to such articles as automobile tires than to pocket knives or packages of chewing gum. Further, nowhere in the circulars, advertisements or other literature of the defendant is there disclosed anything intended or calculated to deceive or create confusion in the minds of the purchasing public as to the origin or ownership of its tires. Distinguishing words are so used as to prevent deception or misunderstanding. Still further, it does not appear from the evidence that there was any case in which one desiring to purchase the complainant's tire was misled into a belief by the appearance of the defendant's tire or its package that the defendant's tire was that of the complainant. I am satisfied that unless in connection with the sale and disposition of the defendant's "seconds" the bill cannot be sustained.

[3, 4] It appears from the evidence that the defendant sells its "seconds" to "The Tire Store" in Greensburg, Pennsylvania, and that The Tire Store disposes of them to various customers. This store is at the distance of only a few miles from Jeannette where the manufacturing plant of the complainant is situated. On the front of the store there are two large signs, one of them bearing the words "Greensburg's Original Factory Seconds Tire Store," and the other the words "The Tire Store Automobile Tires Factory Seconds Vacuum and Plain Treads Standard Make Guaranteed Tires Some Prices." A "second" is a tire which is defective in manufacture and sold without guarantee. Adjoining The Tire Store and fronting on the same street there is another store where the complainant's Vacuum Cup tires are sold. The building has signs on its front bearing the words "Greensburg Tire & Retreading Co." and "Vacuum Cup Tires." It does not appear that any of the defendant's Dreadnaught Vacuum

Tread .Tires, save "seconds," were sold at the above mentioned tire store. The evidence shows that while it was the custom of automobile rubber tire manufacturers in selling or otherwise disposing of their "seconds" either to brand them with the word "Second," or to remove and obliterate from the tires the name of the manufacturer and of the tire, the defendant did neither; but on the contrary omitted to so brand its "seconds," and while removing and obliterating the words "Made by The Dreadnaught" and "Baltimore, Md.," left thereon the words "Tire & Rubber Co." and "Vacuum Tread." The circumstance that the defendant's "seconds" were sold to consumers by The Tire Store, and not by the defendant directly, is immaterial; for it is well settled that on the issue of unfair competition in trade the same liability will exist where the manufacturer puts it within the power of a dealer to deceive the public and the public is deceived as where the manufacturer directly accomplishes that result. In Lever v. Goodwin, L. R. 36 Ch. Div. 1, a decree made by Mr. Justice Chitty in favor of the complainant in a case of unfair competition in trade was affirmed. In his decision he well said:

"Now it has been said more than once in this case, that the manufacturer ought not to be held liable for the fraud of the ultimate seller—that is, the shop keeper or the shop keeper's assistant; but that is not the true view of the case. The question which I have to try is whether the defendants have or have not knowingly put into the hands of the retail dealers the means of deceiving the ultimate purchasers."

Notwithstanding certain evidence offered by way of explanation of the course pursued by the defendant in the sale and disposition of its "seconds," I am satisfied that it was calculated, if not designed, to mislead the purchasing public as to their origin, and that the defendant is answerable for unfair competition in trade with respect to them.

[5-8] It is contended, and there is evidence to show, that on a certain occasion a "Vacuum Cup Clincher Casing" was, by the procurement of the complainant, ordered by one Hanse, as a dealer in Long Island, of one Pagani, the general sales agent of the defendant company with an office in New York, and that the order was filled with a Dreadnaught Vacuum Tread tire by the Rubber Tire Accessories Company in that city, a distributor for the defendant company. The complainant attaches to this transaction a degree of importance to which it is by no means entitled. The order did not specify a "Pennsylvania Vacuum Cup" tire. Accompanying the order Hanse sent a card on which he stated that "Arrangements have been made with the Pennsylvania Rubber Co., whereby he can furnish at short notice Pennsylvania Oil Proof Vacuum Cup * * * Casings," etc. There is evidence on the part of the defendant, given by Pagani, that he supposed that the order was given for one of the defendant's tires, for the reason that as Hanse represented himself as having made arrangements, as above quoted, with the complainant, he, Pagani, did not believe that an order would have been given to the defendant or its distributor for any other than one of its own tires. This seems to be a reasonable and natural explanation of the transaction, especially in view of the facts that the order did not mention a Pennsylvania

Vacuum Cup Tire; that the word "clincher" is in raised letters on the defendant's tire as well as on that of the complainant; and that the defendant's tire contains a vacuum cup as well as that of the complainant. Under these circumstances I am unable to find any fraud in this transaction. Fraud is not a matter of mere surmise but must be satisfactorily proved; and here the proof is lacking. Indeed, were it otherwise I should not be prepared to hold that an isolated act of fraud for which the law would furnish an appropriate remedy would justify a general restraint of a legitimate business. So there is evidence upon which the complainant lays great, and, I think, unwarranted stress, tending to show that on a certain occasion a telephonic order was by the procurement of the complainant given by one Painter to The Tire Store for a "Vacuum Cup" tire. This order was given August 4, 1914, and on the same day a letter was written by Painter to The Tire Store in which he ordered a "Pennsylvania Vacuum Cup Second Tier" [Tire]. The letter admittedly related to the same subject as the telephonic order. One of the defendant's Vacuum Tread "seconds" was sent to Painter. There is a serious conflict in the evidence on the point whether the defendant's "second" was sent to Painter pursuant to the telephonic order before the receipt by The Tire Store of the above mentioned letter, and also as to the exact purport of the telephonic order. The testimony of Farr who received that order at The Tire Store substantially differs from that of Painter, who gave it, as before stated, by procurement of the complainant. Farr states that Painter asked him "whether we had a Vacuum Cup Tire," and "I told him we did not, but we had a Vacuum Tread tire, in a second, made in Baltimore"; that "he asked me whether we had a 32 x 3½," and "I told him to hold the phone a minute until I could look"; that "I went to the pile and looked and I returned to the phone and told him we had. I told him the price, and he asked me whether we would ship him one"; that "I told him I would" and "shipped him a 32 x 3½ Q. D. Vacuum Tread second"; and that it was shipped sometime in the afternoon of the same day. It appears from the evidence that none of the complainant's "seconds" were sold at The Tire Store. Under the circumstances, and especially in view of the specific and natural character of Farr's testimony, I am unable to find that fraud was practiced in the furnishing to Painter of one of the defendant's instead of one of the complainant's "seconds." The Hanse and Painter transactions above mentioned are the only instances in which there has been an attempt to establish fraud in fact on the part of the defendant. But for the reasons hereinbefore expressed, although I am unable to discover that actual fraud was practiced by the defendant with respect to the disposition of its "seconds," I am satisfied that the defendant is answerable for unfair competition in trade with respect to them, and that the complainant is entitled to a decree enjoining and restraining the defendant from selling or furnishing for sale, or permitting to be sold, its "seconds" of the Dreadnaught Vacuum Tread tires without the words "Made by The Dreadnaught Tire & Rubber Co." in raised letters on the side of such tires, unless the words "Vacuum Tread" be first removed and obliterated, or from directly or indirectly stating or holding out that its

"seconds" are the "seconds" of the Vacuum Cup tires of the complainant; the costs to be equally divided between the parties. No accounting will be decreed for the reason that it does not appear that any one desiring to obtain the complainant's tire was misled into the purchase of one of the defendant's tires for that of the former.

A decree for the complainant in accordance with this opinion may be prepared and submitted.