AULT & WIBORG CO. v. CHESHIRE et al.

(Circuit Court, S. D. Iowa. C. D. July 21, 1909.)

No. 2,467.

TRADE-MARKS AND TRADE-NAMES (§ 3*)—NAMES SUBJECT TO OWNERSHIP—DESCRIPTIVE TERMS.

The name "No Wash Up," as applied to a preparation for use on printing rollers and lithographing plates to obviate the necessity of washing the same after use is descriptive, and its use by one manufacturer gives him no exclusive right, nor right of action to enjoin its use by another as the name of a different preparation used for the same purpose, where the two are clearly distinguishable by their odor, the shape and appearance of the cans in which they are put up for sale, and by the labels,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and there is no attempt by defendant to sell its product as that of complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*

Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]'

In Equity. Suit by the Ault & Wiborg Company against Carey A. Cheshire and the Cheshire Chemical Company. Decree for defendants.

Walter F. Murray, for complainant.
Thomas A. Cheshire, for respondents.

SMITH McPHERSON, District Judge. This case is by a bill in equity, complainant being a corporation organized under the laws of the state of Ohio, and the defendants citizens of Iowa, and the jurisdictional amount is alleged. The action is of and concerning a compound for use upon printers' rolls, designated as "No Wash Up." It was designated by complainant as an arbitrary trade-mark for the compound, and the same has been used by complainant since June, 1906. Complainant has extensively advertised the same, and the contention is that it is a valuable compound for such use, and largely sold upon the markets for such use, and is represented to be of great value. Defendants are using a compound known as "No Wash Up," and sold extensively in Iowa and elsewhere; the allegation being that complainant's compound is very valuable and of great practical use, and that defendants' compound is of inferior quality. An injunction against the defendants is prayed.

The real contention in the case is as to whether the designation "No Wash Up" is either a name, sign, symbol, or device, whether the same is used to identify the product, or whether the words "No Wash Up" are simply descriptive of the use of the product. Neither party has a registered trade-mark, and neither party has a copyright. Complainant contends that its product is placed in small cans, and that defendants' cans and labels closely resemble those of complainant, and that defendants' product is often sold to the public, deceiving the public, inducing purchasers to buy the inferior product of the defendants, making the public believe that defendants' product is that of complainant.

The evidence shows substantially the following as the facts: The words "wash up" are a slang expression of common and general use in printing offices, meaning that the rollers and plates, after use, must be washed; the ordinary means for so doing being by the use of kerosene and a cloth. The ink on the rollers becomes dry after a short time, making them unfit for use until cleaned; the cleaning of which is done with considerable labor. By the use of the product of either complainant or defendants, the cleaning with kerosene and cloth would be avoided. Complainant contends that the words "No Wash Up" would indicate a result, but that the expression would not indicate what it was, and that it would not indicate whether it was an ink which would not require washing, or whether it was a new process

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of printing, but only that the process of washing was to be obviated in some way; while the defendant contends that, the expression being in the language of the printing office, the words are descriptive of the product and the uses to which it would be put.

Each party refuses to disclose the component parts of their respective compounds. But samples of each are in evidence, and it is conceded, as well it might be, that by the sense of smell complainant's compound is heavily impregnated with ether, while defendants' compound is heavily impregnated with oil of cloves. And by the sense of smell no one could be mistaken as to whose compound he was buying or using. Complainant's compound is sold in a cylindrically formed can, four inches in height and three inches in diameter, with a top opening for use, with a screw lid of about an inch in diameter. Defendants' product is sold in cans of dome or jug shape, minus the handle, with a like top, except that it is smaller and with a cork for a stopper.

The label on complainant's can is of an orange color, while the label on defendants' can is white paper. The label on complainant's can reads, "For Lithograph and Type Rollers. 'NO WASH UP.' Made only by the Ault & Wiborg Co., Cincinnati, New York, Chicago, London, Eng., Mexico, D. F." Another part of the label reads: "'NO WASH UP' can be used on both Lithograph and Type Rollers"—followed by directions. On another part of the label is the English Lion holding a flag. Defendants' can is labeled: "For all lithographing and printing rollers. C. C. C. NO-WASH-UP SOLUTION Manufactured by CHESHIRE CHEMICAL COMPANY, Des Moines, Iowa, U. S. A. Used in all the leading pressrooms of America"—and with directions. The directions in both cases are substantially the same, namely, to apply a few drops upon the rollers or plate when quitting work, at noon or in the evening. The name on complainant's label is in quotation, "No Wash Up," and on defendants' without quotation marks.

The complainant has extensively advertised its products in magazines and periodicals taken by printers. Defendants do not advertise other than by sending samples out to printers over the country. Defendants send their product out in large quantities in a square can containing perhaps half a gallon. The evidence shows that the compounds of both the complainant and respondents are of practical use and of substantial benefit to the printers, saving much time and work in cleaning rollers and plates after use. But the evidence does not show which compound is the better, and with respect to the one which is the better the court makes no finding, as the evidence does not show. Complainant's product sells for 75 cents per can, and defendants' at 50 cents; but neither label shows the price.

On the foregoing facts the complainant cannot succeed, for obvious reasons, and because of well-known rules. The name is descriptive. The term "wash up" is the language of all printing offices. "No wash up" is the slang of the office, when the cleaning of the rollers and plates is sought to be avoided; and, being a descriptive term, that of itself will avoid the alleged cause of action of complainant.

But, going to the farthest extent that any court, English or American, has gone, complainant cannot recover because of an entire failure to show that defendants are seeking to or do palm off their "wash" or cleaner as those of complainant. The odor or smell are so different that no one can be deceived. The size and shape of the can are wholly unlike. The labeling is not at all similar. The prices are different. The one advertises, and the other does not. The one is labeled as made at Des Moines, and the other at Cincinnati.

The only similarity is in the use, as to which complainant has no patent, and as of right should have no monopoly, and the other similarity is in name. As to that being descriptive, the evidence is scarcely in conflict; and, if it were, complainant furnishes the proof by labeling the words "No Wash Up" in quotation marks, thereby showing that the name is borrowed from some source.

The bill of complaint will be dismissed.