## CARTHAGE TOBACCO WORKS v. BARLOW-MOORE TOBACCO CO.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1925.)

No. 4215.

1. **Trade-marks and trade-names and unfair competition ⟨⟩3(4)—Words "Red" or "Red Leaf," descriptive of grade of tobacco, held not valid trade-mark.**

Words "Red" or "Red Leaf," commercially used to designate grade of tobacco, cannot be appropriated as trade-mark, notwithstanding leaf is not actually red in color, or that order for "Red Leaf," nothing more appearing, would be too indefinite to fill.

2. **Trade-marks and trade-names and unfair competition ⟨⟩93(3)—Evidence held to show that words "Red Leaf" applied to grade of tobacco had significance in retail and wholesale markets.**

Evidence that red grades of tobacco were quoted at higher wholesale prices in trade journals than other grades held sufficient to show that words "Red Leaf" had significance as a descriptive term in both retail and wholesale markets.

3. **Trade-marks and trade-names and unfair competition ⟨⟩3(4)—Descriptive words not valid trade-marks.**

Words, marks, or names not denoting origin or ownership, but merely descriptive and commonly and commercially known and used in trade as descriptive of quality, class, grade, or composition of article sold, are not valid trade-marks.

Appeal from the District Court of the United States for the Western District of Kentucky; Charles H. Moorman, Judge.

Suit by the Carthage Tobacco Works against the Barlow-Moore Tobacco Company. Decree for defendant, and plaintiff appeals. Affirmed.

This appeal involves the question of infringement of a registered trade-mark and unfair competition. The appellant and appellee are both engaged in the manufacture and vending of chewing and smoking tobacco. The appellant in its bill of complaint

alleged that in June, 1899, it adopted as a trade-mark the words "Red Leaf" to designate its product and has ever since used that name for that purpose; that when this name was adopted by appellant it was original, new, distinctive, and had never theretofore been used in the tobacco business; that on June 25, 1901, it applied to the United States Patent Office for the registration of this trade-mark "Red Leaf," and after full compliance with the law, registration was allowed on August 6, 1901, and is in full force and effect, unrevoked and uncanceled; that this trade-mark is the property of the appellant and has ever since been used to designate its products exclusively; that it has expended a large amount of money in advertising its tobacco for 19 years as "Red Leaf" and has built up a large trade; that the appellee has put upon the market a chewing and smoking tobacco under the name "Moore's Red Leaf Twist" and "Moore's Red Leaf Smoking Tobacco"; that the products are similar in size, color, and shape; that the appellee's use of the words "Red Leaf" is an infringement of appellant's trade-mark; and that the use of the same and the imitation of plaintiff's package is calculated to deceive the trade and is unfair competition.

The appellee in its answer denied that appellant had or has any right to appropriate to its exclusive use the words "Red Leaf" in the tobacco trade, and further alleged that these words at the time of their adoption by appellant were not original, new, or purely fanciful and arbitrary, but, on the contrary, that the words "Red Leaf," whether taken separately or in combination, have been of common and general use in the tobacco business for a long number of years; that they are fairly indicative of the grade and quality of tobacco and belong to the trade and to the public and cannot be exclusively appropriated by any one manufacturer or dealer.

The appellee also denied it had been guilty of any unfair competition in the marketing of its products. The trial court found on the issue joined for the defendant, denied the injunction, and dismissed the bill of complaint, from which decree the Carthage Tobacco Works appeals.

Edwin C. Henning, of Evansville, Ind. (H. B. McGinness, of Carthage, Tenn., on the brief), for appellant.

John B. Rodes, of Bowling Green, Ky. (Sims & Sims, of Bowling Green, Ky., on the brief), for appellee.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). Upon the trial of this cause, a stipulation was filed, which, in part, reads as follows: "All twists and granulated tobaccos are dressed and marketed for the public in practically the same form, color and shape of package as complainant and defendant are using. The sole and only issue arising on the question of infringement between the complainant and defendant being the use by defendant of the words 'Red Leaf.'"

[1] While there is some conflict in the evidence, nevertheless it appears from the record that the appellee established by a fair preponderance of the evidence that the words "Red Leaf" are not fanciful and arbitrary, but are distinctive and descriptive of a grade, character, and quality of certain species of tobacco; that these words are commonly used and employed as descriptive of grade and quality of these several species by all tobacco raisers, dealers, and manufacturers. There is also substantial evidence tending to prove that there is a distinct variety or species of tobacco grown from seed, in Barren and Smith counties, Tenn., in the upper Cumberland district, known as "Tennessee Red Leaf." The appellant's factory is located in Barren county.

It is claimed on behalf of appellant that these words cannot be descriptive of grade or quality for the reason there is no such thing as "Red Leaf" tobacco. Strictly speaking, that may be true, nevertheless it is conclusively established by the evidence that red or red leaf is commercially used to designate a certain grade, differing in color from other grades of at least three species or varieties of tobacco grown in Tennessee, and that what is known as the Red or Red Leaf grade is recognized as of better quality and commands a higher market price than several other grades of the same tobacco. It is therefore wholly unimportant whether the leaf is actually red or only a reddish brown, if it be known and designated in the trade as "Red Leaf."

It is further claimed on the part of the appellant, and there is some evidence to that effect, that "Red Leaf" standing alone would have no significance in the trade, and that if an order were given to a dealer for "Red Leaf," nothing more appearing, it would be too indefinite to fill. That, no doubt, is true, but it further appears from the evidence that it would be equally true if an order were given for a distinct species, or variety, such as Burley, Green River, or One-Sucker tobacco, without designating dark brown, red,

bright, or select. Such an order would be equally as indefinite as an order for Red Leaf without designating "Green River," "One-Sucker," "Burley," or "Tennessee Red Leaf," yet it would hardly be claimed that "Green River," "One-Sucker," "Burley" or "Tennessee Red Leaf" could be appropriated as a trade-mark.

[2] It is also claimed on the part of the appellant that even though "Red Leaf" might have some meaning in the trade to growers, dealers, and manufacturers, it has no significance whatever to the consumer. This contention is not sustained by the evidence. It appears by the excerpts from two issues of Western Tobacco Journal of Cincinnati of March 5 and 12, 1923, copied into the record, that red grade of Green River leaf is quoted at $18 to $40, while dark leaf of the same tobacco is quoted from $10 to $30. A like difference in market value also applies to like grades of One-Sucker and Burley. This evidence would indicate that the consumer is very much concerned about the color of the tobacco he uses and is willing to pay a higher price for the red or bright leaf than the dark leaf of the same tobacco. This demand and willingness to pay on the part of the consumer is reflected in the wholesale market quotations, otherwise a level price would obtain for all colors of the same variety of tobacco in both wholesale and retail markets. If the ultimate consumer were not concerned as to color, the grading by color would appear to be without purpose or advantage in the trade.

[3] Words, marks, or names which do not denote origin or ownership, but are merely descriptive and commonly and commercially known and used in the trade or business as descriptive of the quality, class, grade, or composition of the article sold, are not valid trade-marks and may not be appropriated. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 463, 14 S. Ct. 151, 37 L. Ed. 1144; Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706, 711, and cases there cited.

Upon the question of unfair competition it clearly appears that, eliminating from the appellee's label the words "Red Leaf," there is no similarity whatever. The script upon the appellee's label is wholly different and there is no resemblance whatever, "even as a picture." Schlitz Brewing Company v. Houston Ice Co., 250 U. S. 28, 30, 39 S. Ct. 401, 63 L. Ed. 822.

The appellee having the right to use the words "Red Leaf," it cannot now be held guilty of unfair competition because it has done so. The stipulation that all twists and

granulated tobaccos are dressed and marketed for the public in practically the same form, color, and shape of package as complainant and defendant are using, eliminates from our consideration all questions of similarity of packages in connection with the claim of unfair competition.

For the reasons stated, the judgment of the District Court is affirmed.