31 C.C.P.A.(Patents)

## PERSONAL PRODUCTS CORPORATION v. ALLEN LABORATORIES, Inc.

### Patent Appeal No. 4799.

Court of Customs and Patent Appeals.

Feb. 7, 1944.

Rehearing Denied April 3, 1944.

George H. Lorch, of Chicago, Ill. (Charles M. Thomas, of Washington, D. C., of counsel), for appellant.

Pennie, Davis, Marvin & Edmonds of New York City (H. Stanley Mansfield, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in a trade-mark opposition proceeding from the decision of the Commissioner of Patents affirming the decision of the Examiner of Interferences, sustaining appellee's notice of opposition and holding that appellant was not entitled to the registration of its trade-mark "Meds" for use on "tampons."

It appears from the record that appellant's trade-mark "Meds" is used on an unmedicated internal catamenial device, comprising telescopically arranged paper tubes and a cotton tampon having a withdrawal string attached thereto and extending outwardly through the inner tube; that appellant sells its goods at retail to the general public through drug stores, chain stores, and department stores throughout the United States at twenty cents per package of ten tampons; and that it has expended approximately $375,000 in advertising its product and its trade-mark in newspapers and magazines throughout the United States.

In its application for registration, filed June 25, 1940, appellant alleged that it had used its trade-mark on its goods since June 21, 1939.

Appellee is the owner of trade-mark registration No. 348,970, issued August 17, 1937, on an application filed February 24, 1937, for the trade-mark "Med-I-Pax" for use on "medicated vaginal suppositories," although it appears from the record that it advertises and sells its goods as "vaginal tampon suppositories" under the trade-mark "Medipax."

The goods of the parties are of substantially the same construction, except that in appellee's device a medicated suppository, molded to facilitate easy insertion, is attached to the upper end of the cotton tampon. Appellee's device is "used for medical treatment" and not as a "catamenial device." It is used in the treatment of "gynecologic conditions," and is, therefore, for the prevention, cure, or alleviation of disease. The medication consists of either metaphen or merthiolate. In appellee's device the cotton tampon to which the medicated suppository is attached is designed to hold the medicament in the area of infection or inflammation and to absorb exudates.

It further appears from the record that appellee's goods are "ethical" products; that they are sold at $1 per package of six by druggists on physicians' prescriptions, although they may be purchased without such prescriptions; that appellee has expended approximately $15,000 in advertising its goods and its trade-mark; that they are advertised in medical journals, by contact with physicians, by exhibits at medical conventions, and, as stated by appellee's witness E. A. Griswold, vice president of the opposer company, through a physician in the employ of the appellee company "whose only duty is to interest hospitals and clinics as well as members of the medical profession in the use of Medipax Brand Vaginal Tampon-Suppositories. His duties also include the organization of clinical research at such institutions."

Appellee's goods are not advertised for sale to the general public through magazines and newspapers as are appellant's catamenial tampons.

The witness Griswold testified on direct examination that the appellee company was incorporated on December 24, 1938; that he had been vice president of the company since January 27, 1939; and that he had been engaged in the manufacture of drug and pharmaceutical products for more than ten years. We quote from the testimony of the witness as follows:

"Q46. What does the word 'Med' mean to you? * * * A. The word 'Med' appears in the Funk & Wagnalls Standard Dictionary, in Webster's New International Dictionary and in the New Century Dictionary as an abbreviation for medical or medicine."

"Q49. Is that what the word means to you? A. I think that is correct."

The tribunals of the Patent Office concurred in holding that the goods of the

parties possessed the same descriptive properties; that the marks were confusingly similar; and that appellant was not entitled to the registration of its mark.

In his decision holding the marks to be confusingly similar, the commissioner stated, among other things, that, although the goods of the respective parties are not competitive, they "are very closely associated in use, and may reasonably be assumed to be produced by the same manufacturer. I doubt that one would be mistaken for the other, but if sold under similar trade-marks I am convinced that there is at least some likelihood of confusion as to origin. In reaching this conclusion I have not overlooked existing differences in price and in methods of sale. Both are subject to change. Nor is it material that there is no evidence of actual confusion."

Although it is stated in appellant's reasons of appeal that the goods of the parties do not possess the same descriptive properties, that issue is not discussed in appellant's brief. Accordingly, it is unnecessary for us to discuss it here. It is sufficient to say that we are in agreement with the views expressed by the tribunals of the Patent Office that the goods of the parties possess the same descriptive properties.

It is contended here by counsel for appellant that, considering the differences in the trade-marks of the parties and the goods to which they are applied, the marks are not confusingly similar; that appellant's trade-mark "Meds" is a coined, arbitrary mark, and, as applied to appellant's goods, has no descriptive significance; that apart from the syllable "Med" in appellee's mark, there is no similarity between the marks of the parties; that as the syllable "Med" in appellee's mark is an abbreviation of the terms "medical" or "medicine," as used in appellee's mark, it is descriptive of the character and quality of appellee's goods and, therefore, is not the dominant feature of appellee's trade-mark; that appellee is not entitled to its exclusive use; and that appellant's trade-mark "Meds" was "adopted as a contraction of appellant's well-known trade-mark 'Modess', extensively used as applied to catamenial napkins, a competitive product then and now sold on an extensive scale." (It may be said at this point that, although it appears from the record that appellant manufactures and sells catamenial napkins under the term "Modess," is does not appear that the term "Meds" was adopted as a contraction of the term "Modess.")

The record discloses that prior to the adoption of the trade-mark "Meds" for use on tampons, appellant caused a search to be made in the United States Patent Office for the purpose of ascertaining whether there were any registered trade-marks similar to the term "Meds" and that such search disclosed, among other registered trademarks, appellee's mark "Med-I-Pax," hereinbefore referred to; the trade-mark "Medo," registered October 14, 1919, for use on sanitary bloomers; the trade-mark "Medpaks," registered December 29, 1925, for use on sanitary napkins; the trademark "Medix," registered August 2, 1927, for use on sanitary napkins; the trademark "Med," registered July 30, 1929, for use on pharmaceutical preparations, compounds, or mixtures for coughs, whooping cough, colds, and similar infections of the throat and lungs; the trade-mark "Med," registered September 11, 1928, for use on preparations for the treatment of boils, sties, carbuncles, feruncles, felons, and pimples due to staphylococcus infection; the trade-mark "Em-Dee," registered December 6, 1927, for use on surgical pads, surgical mattresses, surgical sheets, surgical beds, and maternity packs; also the trademark "MD," enclosed within a fanciful design, registered August 15, 1911 (renewed), for use on medicinal plasters.

Counsel for appellant also contends that appellee's "parent company, Tampax, Inc., does market an unmedicated cotton tampon used for the identical purpose for which applicant's tampon is employed and sold in direct competition therewith. But, this product bears the name 'Tampax', a mark more nearly like 'Med-I-Pax' than applicant's coined and arbitrary mark 'Meds' * * *." (Appellee's witness Griswold testified on cross-examination that prior to his becoming vice president of the appellee company, he was employed by "Tampax, Incorporated," and that the Tampax company manufactured and sold a device for "catamenial protection" known as "Tampax." However, there is nothing in the record to indicate how long the Tampax company had been selling its product under its trade-mark "Tampax," or that that company is related either directly or indirectly to the appellee company. Furthermore, priority of use and of confusing similarity of the terms "Med-I-Pax" and "Tampax" are not issues in this case.)

The prefix "Med" in appellee's trade-mark is, as stated by appellee's witness Griswold, defined by the lexicograph-

ers as an abbreviation of the terms "medical" and "medicine." See Funk & Wagnalls New Standard Dictionary, Webster's New International Dictionary, and The Century Dictionary and Cyclopedia. Furthermore, it was conceded by that witness, who, at the time of the taking of his testimony, had been engaged in the manufacture of drugs and pharmaceutical products for more than ten years, that he understood the prefix "Med" to be an abbreviation of "medical" or "medicine." Accordingly, the prefix "Med," as used in appellee's mark, is descriptive of the character or quality of appellee's goods, and, therefore, is not the dominant feature of the mark. See Younghusband v. Kurlash Company, Inc., 94 F. 2d 230, 25 C. C. P. A. (Patents) 886; American Brewing Co. v. Delatour Beverage Corp., 100 F.2d 253, 26 C. C. P. A. (Patents) 778; Miles Laboratories, Inc. v. Pepsodent Co., 104 F.2d 205, 26 C. C. P. A. (Patents) 1272; Frankfort Distilleries, Inc., v. Kasko Distillers Products Corporation, 111 F.2d 481, 27 C. C. P. A. (Patents) 1189; Miles Laboratories, Inc. v. United Drug Co., 112 F.2d 814, 27 C. C. P. A. (Patents) 1273. However, the term "Meds," as applied to appellant's product, is not descriptive of the character or quality of appellant's goods. Whether it is registrable as a trade-mark for use on appellant's goods in view of the registered marks hereinbefore referred to, such as, for example, "Medo" for use on sanitary bloomers and "Medix" for use on sanitary napkins, is not an issue before us, there having been no ex parte rejection of appellant's application for the registration of its mark.

The sole issue in the case is whether, considering the differences in the marks of the respective parties and the differences in the goods to which the marks are applied, concurrent use of the marks would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

It is unnecessary that we further analyze the marks of the parties, or that we again explain the differences in structure of the devices on which they are used.

After careful consideration of the issues in the case, we are constrained to disagree with the views expressed by the tribunals of the Patent Office.

Considering the fact that appellee's "Medicated Vaginal Suppositories" are used for medical treatment and for the prevention, cure, or alleviation of disease, whereas appellant's *unmedicated* tampons are devices used solely for catamenial protection, and considering the differences in the marks of the parties, we are of opinion that the concurrent use of the marks on the goods of the parties would not be likely to cause confusion or mistake in the mind of the public or to deceive purchasers. Accordingly, the decision of the Commissioner of Patents is reversed.

Reversed.

BLAND, Associate Judge (dissenting).

I am not in agreement with the majority, either in the conclusion or the reasons assigned for arriving at the same. The goods of the respective parties are not only of the same descriptive properties but they are so nearly identical in many respects that I cannot escape the conclusion that the use of "Meds" on appellant's goods will lead to the character of confusion which the trade-mark law sought to prevent.

The mark "Meds" is suggestive that the goods upon which it is used are medicinal in character, whereas they are not in any respect used for medicinal purposes. The adoption of the mark alone would suggest to me a desire on the part of its user to reap where it has not sown and to profit by the confusion with such marks as "Med-I-Pax."

The majority, in stating the case, have emphasized the difference in the uses and the manner of selling the goods of the parties. Advertising practices and manner of sale, as we have said many times, are always subject to change and should ordinarily not influence us in our decision.

I disagree with the manner in which the majority have dissected the appellee's trademark and the conclusion that "med," being descriptive, is not the dominant portion of the mark. The mark as a whole is not descriptive, and I cannot concur in a line of reasoning which permits the whittling away of a valid mark and thus promotes confusion in the purchasing public.

Some of the best and most favorably known trade-marks have syllables which, if considered alone, are descriptive; and the descriptive syllable may be the main feature of the mark, yet the mark as a whole may unquestionably be a valid and valuable one. If the reasoning of the majority in this case had been applied in numerous decisions heretofore handed down by this court, we should have arrived at different conclusions. For instance, in

Celotex Company v. Millington, 49 F.2d 1053, 18 C. C. P. A. (Patents) 1484, the marks "Celotex" and "Fir-Tex" were compared. We there held that "Fir-Tex" could not be registered over "Celotex" notwithstanding the claim that the term "tex" was common property. There was no similarity between the terms "celo" and "fir." Nevertheless, we held, as we have in numerous other cases, that the marks should be regarded as a whole and not dissected, and that the registration of "Fir-Tex" would mislead the public in view of the well-known mark "Celotex." I need not cite a long list of cases to the same effect which I think are, in effect though not expressly, overruled by the reasoning which the majority have applied to the instant issue.

If the conclusion of the majority is right and the appellant may register a mark containing the descriptive term "med" on goods that have no medicinal qualities, it would seem to follow that the appellee, in the natural extension of its business, would have an equal right to use its term "Med-I-Pax" on goods identical with those of appellant. The goods are substantially identical in construction and mode of use. When appellant's mark is registered, appellee, according to the majority, could not use its mark on its tampon if it dispensed with the medicinal element of the same.

I think the tribunals of the Patent Office correctly decided the issue, and I would affirm the decision of the Commissioner of Patents.