**DIETENE CO.**

v.

**DIETRIM CO. et al.**

Civ. No. 87–52.

United States District Court
D. Nebraska, Omaha Division.
June 21, 1954.

Harold A. Prince, Grand Island, Neb., Wilkinson, Huxley, Byron & Hume (Gerrit P. Groen), Chicago, Ill., for plaintiff.

Abrahams & Kaslow (Ben E. Kaslow), Omaha, Neb., Seymour Smith, Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

This action was instituted by the Dietene Company, a Minnesota Corporation, to enjoin the defendant, Vitamin Industries, a Nebraska corporation, from using the mark "Dietrim" as applied to a reducing supplement because it is confusingly similar to "Dietene", a mark which plaintiff registered under the Trade-Mark Act and also used to identify a reducing supplement. Since plaintiff charges infringement of a trade-mark registered in the United States Patent Office, this court has jurisdiction. 15 U.S.C.A. § 1121. The requisite diversity of citizenship and amount in controversy also present an appropriate basis for this court to assume jurisdiction of the cause. 28 U.S.C.A. § 1332.

The case was tried to the court without a jury, and after careful consideration of the material and competent evidence produced at the trial the court makes the following special

### Findings of Fact:

Plaintiff owns United States Trade-Mark Registration No. 329,995 for "Dietene" as applied to a reducing supplement. This registration was originally obtained by plaintiff's predecessor under the Trade-Mark Act of 1905, and was subsequently republished on the Principal Register of the Trade-Mark Act of 1946, Lanham Act. 15 U.S.C.A. § 1051 et seq. Plaintiff distributes its products nationally.

Defendant uses the name "Dietrim" in connection with a reducing supplement which it distributes in areas served by the plaintiff corporation. Defendant's mark is not registered and it was not in use prior to the time plaintiff began using its mark.

### Discussion

The Lanham Trade-Mark Act provides that "(n)o trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—* * *. (e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive * * * of them, * * *." 15 U.S.C.A. § 1052. This statute, which merely reflects a long standing equitable doctrine,[1] precludes the exclusive use of descriptive or generic terms as trade-marks. In Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 457, 55 L.Ed. 536, Justice McKenna points out:

"The definition of a trademark has been given by this court and the extent of its use described. It was said by the chief justice, speaking for the court, that 'the term has been in use from a very early date; and, generally speaking, means a distinctive mark of authenticity, through which the products of particular manufacturers or the vendable commodities of particular merchants may be distinguished from those of others. It may consist in any symbol or in any form of words; but as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trademark which, from the nature of the fact conveyed by its primary mean-

---

1. Restatement of Torts (1938), Sec. 721; Canal Co. v. Clark, 13 Wall. 311, 20 L.Ed. 581.

ing, others may employ with equal truth, and with equal right, for the same purpose.' Elgin National Watch Co. v. Illinois Watch Co., 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365, 378. There is no doubt, therefore, of the rule. There is something more of precision given to it in Canal Co. v. Clark, 13 Wall. 311, 323, 20 L.Ed. 581, 583, where it is said that the essence of the wrong for the violation of a trademark 'consists in the sale of the goods of one manufacturer or vendor as those of another; and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief.' A trademark, it was hence concluded, 'must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association.' But two qualifying rules were expressed, as follows: 'No one can claim protection for the exclusive use of a trademark or tradename which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection'."

An examination of the cases discloses that the following marks have been held to be merely descriptive of the goods to which they applied: "Cube Steak" as applied to a meat tenderizing machine; [2] "Launderette" as applied to a washing machine; [3] "3 in 1" as applied to a jig saw which also performed two other functions (sanding and filing); [4] "Ez Flo" as applied to insecticide dusts, plant and horticultural parasiticides, agricultural crop and animal fungicides and plant hormones administered by spraying; [5] "Fastie" as applied to a tube fastening machine used for the purpose of applying fasteners to flexible ends of tubes such as sausage casings; [6] "Carillonic Bells" as applied to electrically operated carillons or chimes; [7] "Mineral Meal" and "Minral Meal" as applied to hog and livestock feed; [8] "Lanolin Plus" as applied to soap and cosmetics; [9] the names "Storybook," "Goldilocks," "Little Bo Peep," "June Girl," "Mistress Mary," "Curly Locks," "Little Miss Muffett," "Red Riding Hood," "Little Miss Donnett" and "Story" as applied to dressed dolls portraying such fictional characters; [10] "Pro-Tek-Tiv" as applied to shoes; [11] "Safe T Seal" as applied to envelopes; [12] "Ashless Ash Stand" in connection with the trade-mark "Smokador" as applied to ash stands; [13] "Specs" as applied to fowl masks or blinders; [14] "Thermogene" as applied to a cotton wadding so prepared as to act as a coun-

2. Spang v. Watson, 1953, 92 U.S.App.D.C. 266, 205 F.2d 703.

3. Bascom Launder Corp. v. Telecoin Corp., 2 Cir., 1952, 204 F.2d 331.

4. Burgess Vibocrafters, Inc. v. Atkins Industries, 7 Cir., 1953, 204 F.2d 311.

5. Application of Diamond Fertilizer Co., 1953, 203 F.2d 767, 40 C.C.P.A.,Patents, 908.

6. Application of Hercules Fasteners, 1953, 203 F.2d 753, 40 C.C.P.A., Patents, 944.

7. Schulmerich Electronics Inc. v. J. C. Deagan, Inc., 1953, 202 F.2d 772, 40 C. C.P.A., Patents, 857.

8. Sargent & Co. v. Welco Feed Mfg. Co., 8 Cir., 1952, 195 F.2d 929.

9. Lanolin Plus Cosmetics Inc. v. Marzall, 1952, 90 U.S.App.D.C. 349, 196 F.2d 591.

10. Nancy Ann Storybook Dolls v. Dollcraft Co., 9 Cir., 1952, 197 F.2d 293.

11. Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., 8 Cir., 1952, 199 F.2d 407: "Concededly descriptive."

12. In Re Alvah Bushnell Co., 1919, 49 App.D.C. 133, 261 F. 1013.

13. Smokador Mfg. Co. v. Tubular Products Co., 2 Cir., 1929, 31 F.2d 255.

14. Cridlebaugh v. Rudolph, 3 Cir., 1943, 131 F.2d 795.

terirritant and to reduce swellings and inflammatory conditions;[15] "Dumore" as applied to electric appliances;[16] "Steem Electric" as applied to electric steam irons;[17] "Air Brush" as applied to an instrument designed for the distribution of pigments by means of an air blast to produce pictures;[18] "No Wash Up" as applied to a preparation for use on printing rollers and lithographing plates to obviate the necessity of washing them after use;[19] "Elastic Seam Drawer" as applied to drawers having a strip of elastic knitted material inserted at the seams;[20] the prefix "Rite" as applied to pens and pencils;[21] "No-D-Ka" as applied to tooth paste;[22] "Lusta" as applied to soap;[23] "Bufferin" as applied to aspirin;[24] "M.M." as applied to malted milk;[25] "Pep" as applied to beverage;[26] "NuGrape" as applied to grape drink;[27] "Bohemian" as applied to beer;[28] "Non-Stick" as applied to windows;[29] "Keepclean" as applied to tooth brushes;[30] "Ruberoid" as applied to flexible waterproof roofing;[31] "Always Closed" as applied to a revolving door;[32] "U-Bar" as applied to greenhouse construction;[33] "Dioxygen" as applied to hydrogen dioxide;[34] "Flora" as applied to flavorings;[35] "Mouse Seed" as applied to rodent exterminator;[36] "Spearmint" as applied to gum;[37] "Red Leaf" as applied to tobacco;[38] "Taffy Tolu" as applied to chewing gum;[39] "Wornova" and "Slipova" as applied to garments;[40] "Vogue Hats" as applied to hats;[41] "Stud" as applied to a belt fastener;[42] "Zero" as applied to clothing designed for winter wear;[43] "Fashionknit" as ap-

15. Thermogene Co. v. Thermozine Co., 2 Cir., 1916, 234 F. 69.

16. Wisconsin Electric Co. v. Dumore, 6 Cir., 1929, 35 F.2d 555.

17. Steem Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 1940, 118 F.2d 122.

18. Air Brush Mfg. Co. v. Thayer, 7 Cir., 1897, 84 F. 640.

19. Ault & Wiborg Co. v. Cheshire, 8 Cir., 1909, 191 F. 741.

20. Scriven v. North, 4 Cir., 1903, 134 F. 366.

21. Rite-Rite Mfg. Co. v. Rite Craft Co., 1950, 181 F.2d 226, 37 C.C.P.A., Patents, 963.

22. No-D-Ka Dentrifice Co. v. S. S. Kresge Co., D.C.Mass.1928, 24 F.2d 726.

23. Lusta-Foame Co. v. Wm. Filene's Sons Co., D.C.Mass.1946, 66 F.Supp. 517.

24. Wise v. Bristol Myers Co., D.C.N.Y. 1952, 107 F.Supp. 800.

25. Horlick's Malted Milk Co. v. Borden Co., 1924, 54 App.D.C. 91, 295 F. 232.

26. Pepsi Cola Co. v. Krause Bottling Co., 4 Cir., 1937, 92 F.2d 272.

27. National NuGrape Co. v. Guest, 10 Cir., 1948, 164 F.2d 874.

28. American Brewing Co. v. Bienville, 5 Cir., 1906, 153 F. 615.

29. N. S. W. Co. v. Wholesale Lumber & Millwork, 6 Cir., 1941, 123 F.2d 38.

30. Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 1910, 178 F. 73.

31. Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536.

32. Van Kannel Revolving Door Co. v. American Revolving Door Co., 7 Cir., 1914, 215 F. 582.

33. William H. Lutton Co. v. Lord & Burnham Co., D.C.N.Y., 1927, 16 F.2d 490; affirmed 2 Cir., 19 F.2d 1023.

34. Oakland Chemical Co. v. Bookman, 2 Cir., 1927, 22 F.2d 930.

35. Florasynth Laboratories v. Goldberg, D.C.Ill.1949, 86 F.Supp. 624.

36. W. G. Reardon Laboratories v. B & B Exterminators, D.C.Md.1933, 3 F.Supp. 467.

37. L. P. Larson Jr., Co. v. Wm. Wrigley, Jr. Co., 7 Cir., 1919, 253 F. 914.

38. Carthage Tobacco Works v. Barlow Moore Co., 6 Cir., 1925, 5 F.2d 469.

39. Colgan v. Danheiser, 7 Cir., 1888, 35 F. 150.

40. Wornova Mfg. Co. v. McCawley & Co., 2 Cir., 1926, 11 F.2d 465.

41. Vogue Co. v. Vogue Hat Co., 6 Cir., 1925, 6 F.2d 875.

42. Greene, Tweed & Co. v. Manufacturers' Belt Hook Co., 7 Cir., 1906, 158 F. 640.

43. B. W. Harris Mfg. Co. v. Werber Sportswear Co., 1950, 183 F.2d 105, 37 C. C.P.A., Patents, 1242.

plied to knitted articles of clothing;[44] "Coco-Quinine" as applied to pharmaceutical preparation containing quinine colored and flavored with chocolate;[45] "Nervine" as applied to a nerve tonic;[46] "Acid Phosphate" as applied to a medicinal preparation;[47] "Cramp Cure"[48] and "Gall Cure"[49] as applied to medicine; "Med-I-Pax"[50] and "Asepti-kons"[51] as applied to vaginal suppositories; "Shredded Wheat,"[52] "Toasted Corn Flakes"[53] and "Raisin Bran"[54] as applied to breakfast cereals; "Frostee" as applied to frozen fruits and vegetables;[55] "Graphic" as applied to cameras;[56] "Realistic" as applied to hair waving machine;[57] "Self-tapping" as applied to screws;[58] "Whirling Spray" as applied to a syringe;[59] "Copperclad" as applied to copper coated steel wire;[60] "Five Disc Cylinder" as applied to a padlock;[61] "Nu-Enamel" as applied to paint;[62] "Textul" as applied to an oil used for cleaning wool and worsteds;[63] "Stabrite"[64] and "Mirrolike"[65] as applied to polish; "All White"[66] and "Dyanshine"[67] as applied to shoe polishes; "Aviation"[68] and "Visualized"[69] as applied to magazines and books; "Oriental Cream" as applied to a cosmetic lotion;[70] "Lather-Kreem" as applied to shaving cream;[71] "Overtone" as applied to solid dry cake of cosmetic preparation;[72] "Speed Wagon" as applied to motor trucks;[73] "Flare Front" as applied to automobile lamp;[74] and "Vacuum Cups"

44. Franklin Knitting Mills v. Fashionit Sweater Mills, D.C.N.Y.1923, 297 F. 247; affirmed 2 Cir., 4 F.2d 1018.

45. William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L. Ed. 1161.

46. Richmond Remedies Co. v. Dr. Miles Medical Co., 8 Cir., 1927, 16 F.2d 598.

47. Rumford Chemical Works v. Muth, 4 Cir., 1888, 35 F. 524, 1 L.R.A. 44.

48. L. H. Harris Drug Co. v. Stucky, 3 Cir., 1891, 46 F. 624.

49. Bickmore Gall Cure Co. v. Karns Mfg. Co., 3 Cir., 1903, 126 F. 573.

50. Personal Products Corporation v. Allen Laboratories, 1944, 141 F.2d 702, 31 C.C.P.A., Patents, 889.

51. Parmele Pharmacal Co. v. Weiner, D. C.N.Y.1925, 5 F.2d 750.

52. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

53. Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 6 Cir., 1916, 235 F. 657.

54. Skinner Mfg. Co. v. Kellogg Sales Co., 8 Cir., 1944, 143 F.2d 895.

55. Thomas J. Lipton, Inc. v. Lerman, D.C. D.C.1952, 107 F.Supp. 835.

56. Folmer Graflex Corp. v. Graphic Photo Service, D.C.Mass.1942, 44 F.Supp. 429.

57. Philad Co. v. Murray's Beauty Salon, D.C.Ohio 1936, 14 F.Supp. 626.

58. Rosenberg v. Shakeproof Lock Washer, Co., D.C.Del.1937, 20 F.Supp. 959.

59. Marvel Co. v. Pearl, 2 Cir., 1904, 133 F. 160.

60. Duplex Metals Co. v. Standard Underground Cable Co., D.C.Pa., 1914, 220 F. 989.

61. Slaymaker Lock Co. v. Reese, D.C.Pa. 1933, 24 F.Supp. 69.

62. Armstrong Paint & Varnish Works v. Nu Enamel Corporation, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

63. In Re Swan & Finch Co., 1919, 49 App. D.C. 94, 259 F. 990.

64. In Re Charles R. Long Jr. Co., 1922, 51 App.D.C. 399, 280 F. 975.

65. Mirrorlike Mfg. Co. v. Devoe & Reynolds Co., D.C.N.Y.1925, 3 F.2d 846.

66. Griffin Mfg. Co. v. It Shoe Polish Co., 4 Cir., 1936, 80 F.2d 514.

67. Barton v. Rex Oil Co., 3 Cir., 1925, 2 F.2d 402, 40 A.L.R. 424.

68. McGraw-Hill Publishing Co. v. American Aviation Associates, 1941, 73 U.S. App.D.C. 131, 117 F.2d 293.

69. Oxford Book Co. v. College Entrance Book Co., 2 Cir., 1938, 98 F.2d 688.

70. In re Hopkins, 1907, 29 App.D.C. 118.

71. A. J. Krank Mfg. Co. v. Pabst, 6 Cir., 1921, 277 F. 15.

72. House of Westmore v. Denney, 3 Cir., 1945, 151 F.2d 261.

73. Application of Reo Motor Car Co., 1927, 57 App.D.C. 9, 16 F.2d 349.

74. Rushmore v. Manhattan Screw & Stamping Works, 2 Cir., 1908, 163 F. 939.

as applied to tires.[75] In each of the seventy-four instances mentioned, the court refused to protect the trade-mark involved in the litigation because such mark was merely descriptive of the product or its qualities and functions. A close analysis of these trade-marks indicates that very few of them are more descriptive as applied to their respective products than the plaintiff's mark in this case.

"Dietene" is a combination of the root word "diet" and the suffix "ene." Etymologically speaking, the root word is of Greek origin (diaita), which finds later acceptance in chronological order in the Latin (dieta), French (diete) and English languages. Among other things, the noun "diet" denotes: "Solid or liquid food taken in regular quantities, or of a particular kind, in a course of medical treatment or in accordance with hygienic rules; a regulated order or course of eating and drinking; a prescribed or regulated regimen." Funk and Wagnall's New Standard Dictionary of the English Language (1949 Ed.) p. 707. The suffix "ene" is used as a termination of adjectives of Latin Origin.[76] Funk and Wagnall's New Standard Dictionary of the English Language (1949 Ed.) p. 821. Thus, it seems that the term "Dietene", although not appearing in the dictionary as such, is merely an adjectival form of the noun "diet", "coined" in keeping with the historical practice. The term is not only suggestive, but actually descriptive of its product's function. The product is to be used in connection with a diet; or, as advertised: "to provide nutritional balance to a reducing diet." As a descriptive term, the mark is not entitled to protection.

The word "Dietene" from a phonetic standpoint is substantially the same as "dieting." [77] Consequently plaintiff should not be entitled to appropriate the term to its own exclusive use. Armstrong Paint and Varnish Works v. Nu Enamel Corporation, 305 U.S. 315, 59 S. Ct. 191, 83 L.Ed. 195; Application of Diamond Fertilizer Co., 1953, 203 F.2d 767, 40 C.C.P.A., Patents, 908; In re Alvah Bushnell Co., 1919, 49 App.D.C. 133, 261 F. 1013; No-D-Ka Dentrifice. Co. v. S. S. Kresge Co., D.C.Mass., 1928, 24 F. 2d 726.

Even if the court assumes that plaintiff's mark is only in part composed of a descriptive term, there is still no basis for protection in this case. The only similarity between plaintiff's and defendant's marks is that of the descriptive term, "diet." The suffixes "ENE" and "RIM" are completely dissimilar. In Solventol Chemical Products v. Langfield, 6 Cir., 1943, 134 F.2d 899, 903, Judge Hamilton had this to say about the trademarks "Solventol" and "Solvete":

> "The word 'solvent' is purely descriptive of any cleaning compound whether semi-solid or liquid and 'Sol' has been used so long by businesses as part of a trade-mark name for cleaning compounds that neither use of the prefix 'Solvent' nor the prefix 'Sol' may be so exclusively appropriated by one manufacturer or tradesman as to wholly deny its use in any manner by others. The idea sought to be conveyed to the mind of the purchaser by the respective trade-marks of the parties to these proceedings is that each is selling a solvent for use in cleaning, and while the prefix 'Sol' or 'Solvent' is common to both marks, each is but descriptive of the product indicated, and being of common right, neither party can claim the exclusive use of either, alone or as the dominating element of a compound word. (Cases cited.)

75. Pennsylvania Rubber Co. v. Dreadnaught Tire & Rubber Co., D.C.Del.1915, 225 F. 138.

76. The term is also used in chemistry to denote a hydrocarbon belonging to the olefin series.

77. No one seems to contend that "dietene" acquired a secondary meaning so we are not concerned with that problem. Cf. Spang v. Watson, 1953, 92 U.S. App.D.C. 266, 205 F.2d 703.

"The suffixes 'vite' and 'tol' distinguish one combination from the other and give an identifying character to the trade designation which makes it unlikely that one trademark could, with the exercise of ordinary care, be mistaken for or be confused with the other. They look unlike, are spelled differently and are phonetically dissimilar."

In Nestle's Milk Products v. Baker Importing Co., 1950, 182 F.2d 193, 196, 37 C.C.P.A., Patents, 1066, "Hycafe" was held not to be confusingly similar to "Nescafe" as applied to coffee extract. Judge Johnson commented:

"The likelihood of confusion in the mind of the public as to origin of the goods it purchases because of the similarity of the marks is, of course, the test applied by this court in opposition proceedings, Standard Laboratories, Inc., v. Proctor and Gamble Co., 167 F.2d 1022, 35 C.C.P.A., Patents, 1146, as well as by other courts in trade-mark infringement and unfair competition actions, Best & Co. v. Miller, 2 Cir., 1948, 167 F.2d 374, 376. The marks considered in their entireties must be considered, Yeasties Products, Inc. v. General Mills, 77 F.2d 523, 22 C.C.P.A., Patents, 1215, Miles Laboratories v. Foley & Co., 144 F.2d 888, 32 C.C.P.A., Patents, 714; Apollo Shirt Co. v. Enro Shirt Co., Inc., 165 F.2d 469, 35 C.C.P.A., Patents, 849. In considering contested marks in their entireties, the court may notice the descriptive as well as disclaimed portions despite the rule that the validity of registered marks which are merely descriptive is not to be challenged in opposition proceedings, West Disinfecting Co. v. Lan-O-Sheen Co., 163 F.2d 566, 35 C.C.P.A., Patents, 706. A descriptive word, having little trade-mark significance, will not be regarded as the dominant part of a mark, Atlantic Seafood Packers v. Florida Fruit Canners, Inc., 166 F.2d 586, 35 C.C.P.A., Patents, 985; National Nu-Grape v. Judge & Dolph Ltd., 154 F.2d 521, 33 C.C.P.A., Patents, 1032; Miles Laboratories, Inc. v. Foley & Co., supra.

"In the instant case, we consider 'cafe' to be a descriptive term as applied to a coffee product. The balance of the marks, 'Nes,' and 'Hy,' are suggestive of the Nestles' Milk Products Company and the Hygrade Food Products Corporation (the parent company of appellee herein), respectively, producers of the products to which the contested marks are applied. They are not similar, and, considering the marks 'Nescafe' and 'Hycafe' in their entireties, we do not find grounds for disagreeing with the commissioner's decision that their concurrent use would not be likely to cause confusion in the trade."

Other cases reaching a somewhat similar result are Caron Corporation v. Ollendorff, 2 Cir., 1947, 160 F.2d 444; Winget Kickernick Co. v. La Mode Garment Co., D.C.Ill.1930, 42 F.2d 513; Ansco Photoproducts, Inc. v. Eastman Kodak Co., 1927, 57 App.D.C. 246, 19 F.2d 720; Switzer v. J. N. Collins Co., 1927, 57 App. D.C. 354, 23 F.2d 775; Lusta-Foame Co. v. William Filene's Sons Co., D.C.Mass. 1946, 66 F.Supp. 517.

The court is of the opinion that plaintiff's reliance upon cases in which the registered mark was neither wholly nor partially descriptive, Frito Company v. General Mills, Inc., 5 Cir., 1953, 202 F.2d 936, or in which the mark though suggestive was fanciful, Douglas Laboratories Corp. v. Copper Tan, 2 Cir., 1954, 210 F.2d 453, is misplaced. For "Diet" or "Dietene" as applied to a supplement for use in diets is merely descriptive and not arbitrary or fanciful.

From what has been said the court has reached the conclusion that plaintiff should be denied the relief sought. Counsel for the defendant shall prepare and submit for approval the appropriate judgment to be entered in accordance with this memorandum.